**STATE of Missouri, Respondent,**

v.

**Sam TYLER, Appellant.**

No. 45787.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 12, 1957.

Raymond H. Vogel, Cape Girardeau, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Sam Tyler, herein called defendant, was convicted of rape by carnally and unlawfully knowing a female child under the age of sixteen years and was sentenced to 20 years in the state penitentiary. He makes no contention on this appeal from the ensuing judgment that the state failed to make a submissible case. It will be unnecessary, therefore, to state the sordid and revolting facts disclosed by the evidence to any greater extent than necessary to adequately deal with defendant's contentions.

Defendant urges nine separate reasons for remand and, inasmuch as our conclusion is that the judgment must be affirmed, we shall deal with defendant's points in the order in which they appear in his brief.

He first contends that the trial court erred in refusing to grant a continuance. On April 13, 1956 (the date of instant trial), defendant moved for a continuance based upon his contention: that two informations, each numbered 837 and both contained in a file numbered 838, charged statutory rapes of the same child, one allegedly occurring on May 7, 1941, and the other on March 24, 1942; that defendant presumed "from the previous information that we had here in Court that the Prosecutor would try [first] the case that was filed first" and that inasmuch as the information covering the May 7, 1941, occurrence had been first filed, defendant was ready in that case but not in the case covering the March 24, 1942, occurrence, the one in which the state had announced ready.

The record discloses that one of the cases was set for trial on March 22, 1956. On that day the state's motion to endorse four witnesses on the information in case "838" was argued and granted. On that same day, defendant's motion to dismiss on the ground that defendant had not been granted a proper preliminary hearing was argued and overruled. During that latter argument, case "838" was clearly identified as the one involving the alleged occurrence of March 24, 1942, and it was made clear that the state did not wish to endorse any witnesses on the information in the other case, referred to orally as "837," until final disposition of "838." Consequently, and despite any confusion which may have theretofore existed as to case and file numbers, the record shows that defendant's counsel should have known on March 22, 1956, that the case which the state intended to try was the one covering the alleged rape occurring on March 24, 1942. That case was continued from March 22 to April 13, 1956, because of the endorsement of the witnesses. Thus, the record facts destroy any factual basis for defendant's first contention.

■ Defendant next contends that the trial court erred in refusing to reprimand the prosecutor and to discharge the jury because of the prosecutor's statement and testimony of certain witnesses referring to an alleged prior criminal record of defendant. Record references relied on by defendant to support that contention disclose the incidents as they are set forth below. As background, however, it should be here noted that the evidence showed that

the prosecutrix, who, at the time of the events in question, was 10 years old, her twin sister, her 8-year-old sister, and her 11-year-old brother went to defendant's house to live and lived there for almost a year. Defendant frequently took the little girls to visit their parents and left them alone with their mother for long periods of time. In his opening statement, the prosecutor referred to the fact of those visits and said that the parents would ask the girls how defendant was treating them and that they would say "All right," but that before defendant would take them on those visits he would tell them, "Don't you tell your parents about what has been going on. Don't you tell them or I'll break your neck. Don't you tell them or they'll send me back to the Pen. Back to the Pen."

Defendant's counsel's objection was, "I object to that and ask that the Prosecutor be reprimanded for unprofessional conduct, and I further ask that the jury be discharged and a mistrial be granted." The prosecutor answered that the testimony would show "exactly what the background of this gentleman was." The court said, "Let that be stricken and the Jury will disregard that statement." Defendant's further request for discharge of the jury was overruled.

During direct examination, prosecutrix was asked whether defendant had threatened her. An objection that the prosecutor was leading the witness was sustained and the court admonished the prosecutor not to lead. Then, in answer to the question, "What, if anything, did Tyler ever say to you, * * *?" the prosecutrix answered, "* * *—he told me if I ever told my parents about this he'd break my neck and he said it'd be too bad for him and send him back to the pen." Defendant's objection, which followed the answer and was unaccompanied by any motion to strike, was "I object to that Your Honor, the Prosecuting Attorney knew it was coming in that way and he was told about this prior to this time when he was talking to the jury in his opening statement and I ask that he

be reprimanded for asking the question which he knew would elicit the answer which he was looking for. He knew it was improper at that time." The court overruled that objection and a request for discharge of the jury.

During the cross-examination of prosecutrix' sister, defendant's counsel asked whether, on these visits of the girls to their parents' home and when they were alone with their mother, she had ever told her mother about defendant doing anything out of the way with her sister, the prosecutrix. The witness answered, "No, sir, because I was afraid—." The prosecutor contended that the witness had not finished an answer to the question. The court said she had answered the question. Defense counsel accused the prosecutor of attempting to obtain a certain unidentified answer. Further colloquy occurred, the result of which was that the defendant continued to claim the question had been answered and the prosecutor continued to insist the witness had been interrupted. The witness, without a further question, then stated, "Because I was afraid. Sam Tyler told us if we told her he'd break our necks and they would send him back to the pen." Defendant moved that the last remark be stricken and the jury instructed to disregard it. The court promptly ordered the last remark stricken and instructed the jury to disregard it, but overruled a motion for discharge of the jury and a motion to reprimand the prosecutor for eliciting the information which he had obtained from the witness.

In the first of the three incidents involved, there was no reason stated for the objection nor was it pointed out wherein the prosecutor had been guilty of unprofessional conduct. Furthermore, it is not entirely clear whether the court meant by its ruling to strike all or part of the statement of the prosecutor as to what Sam Tyler had told the little girls or whether he meant to strike the prosecutor's subsequent statement that the state would show what defendant's background was. We

**456**

are of the view that the trial court did not err in ruling the first incident because it appears that the objection made was not sufficiently specific (as it must have been) to have called the attention of the trial court either to the exact portion of the statement objected to or to the ground for the objection. State v. Davis, Mo., 251 S.W.2d 610, 616 [5–7]. Furthermore, if we assume that the court did understand that counsel was objecting only to that portion of the prosecutor's statement which included the repeated phrase "back to the pen," then it is reasonable to conclude from the record that that was the portion of the statement which the court struck and instructed the jury to disregard; in which event the trial court's action was sufficiently remedial.

■■■ The second incident indicates that the prosecutor was attempting to elicit an answer which would substantiate what he had suggested in his opening statement the proof would be as to "back to the pen." The difficulty is, however, that, while defendant's objection was based on the assertion that the prosecutor had intentionally elicited information which he knew was improper, the objection did not come until after the question was answered. It would appear that if defendant's counsel realized, as indicated by his objection, that the question the prosecutor had asked the witness would elicit an objectionable and prejudicial answer, it was incumbent upon counsel to have objected prior to the answer and, in any event, if the objection was for some reason untimely then to reach the allegedly improper answer by way of a motion to strike. State v. Battles, 357 Mo. 1223, 1229, 212 S.W.2d 753, 757 [7, 8]. Furthermore, again, as in the first incident, defense counsel not only failed to state the specific ground of his objection but also failed to state whether the general objection went to the entire statement, including the admissible threat, or only to that part which indicated that defendant would be sent "back to the pen." State v. Davis, supra. Defendant makes no contention here that

it was improper for the state to show why prosecutrix made no complaint until long after defendant's acts of intercourse with her. It appears, therefore, that part of the answer having been admissible, it was incumbent upon defendant to have specified that portion of the answer which he wished stricken and his reason therefor.

The final incident heretofore set forth indicates that the prosecutor was again intentionally attempting to elicit from the witness, sister of the prosecutrix, the statement that Sam Tyler had made to the little girls, including the part about sending him "back to the pen." When the answer was volunteered by the witness, defendant's counsel for the first time during any of the three incidents specified what he was talking about by properly moving that the particular remark be stricken. He said, "I ask that the last remark be stricken and the Jury instructed to disregard it." The last remark was, "and they would send him back to the pen." The court promptly struck the remark and directed the jury to disregard it, but overruled the motion for mistrial and to reprimand the prosecutor. We are of the view that the prompt action of the trial court in striking the remark and instructing the jury to disregard it was sufficiently remedial. We are also of the view, therefore, that even if, as we shall assume, the portion of the statement, "they'll send me back to the pen," was not an integral part of the whole reason for the little girls' delay in complaining of Tyler's treatment of prosecutrix, nevertheless, we think the trial court did not err in connection therewith. That is because, as noted, the only time defendant directed the trial court's attention to the specific part of the statement he objected to and properly moved to strike that part, the trial court acted promptly in striking the objectionable part and directing the jury to disregard it. We think the trial court did not abuse its discretion in refusing to reprimand the prosecutor or in refusing to declare a mistrial.

Defendant's next contention is that the trial court erred in refusing to reprimand

the prosecutor and to declare a mistrial because of prosecutor's references to separate and distinct offenses allegedly committed by defendant with prosecutrix and to separate offenses allegedly committed by defendant with others and, in the same connection, in admitting evidence of such separate and distinct offenses and refusing to discharge the jury after the evidence had been heard.

■ The evidence showed that the four children were with defendant at his various abodes from May 1941 to March 1942 and that during that entire period defendant had intercourse or attempted to have intercourse with prosecutrix every day, including the date charged in the information, March 24, 1942. It has been settled that there was no error in the admission of evidence of prior similar acts committed by defendant with or upon the prosecutrix. State v. Burkhart, Mo., 242 S.W.2d 12, 14 [4]; State v. Atkinson, Mo., 293 S.W.2d 941, 944 [5]. Consequently, in dealing with defendant's present contention, we shall discuss only those instances wherein it is claimed that separate and distinct offenses with others were referred to or shown in evidence. Certain of the alleged offenses with others to which reference was made either in the opening statement or in evidence were an assault by defendant upon one of prosecutrix' sisters in one instance and defendant's intercourse with another of prosecutrix' sisters in another instance. It will be unnecessary to set forth in detail the portions of the record upon which defendant relies to sustain his instant contention. Suffice to say that a detailed examination of those parts discloses that either no objection was made or the court promptly sustained the objection or instructed the prosecutor to eliminate references to what occurred as far as the children other than prosecutrix were concerned. The record further shows that a general objection now relied upon as going to the matters in question was not in fact an objection to evidence of separate similar offenses committed by defendant with or upon the sisters of prosecutrix but that such general objection was only as to prior acts of intercourse between defendant and prosecutrix occurring in the year 1941.

The additional alleged separate offenses to which defendant claims reference was made or concerning which evidence was heard involved the so-called "kidnapping" of still another (older) sister of prosecutrix. The evidence in a vague and indefinite way disclosed that after the date of the act of intercourse charged in the information, March 24, 1942, defendant took or went away with an older sister of prosecutrix and that when defendant was arrested in connection with the information charging the statutory rape of May 7, 1941, the older sister was with defendant in a county other than that of his residence. Prosecutrix' younger sister answered the question as to whether March 1942 was the last time she had seen Tyler by stating that he had come to their house "when my sister—he kidnapped my sister, older sister * * *." Defendant asked that the witness be instructed to answer the question asked. The court struck the answer and instructed the jury to disregard it and no further action was requested. Prosecutrix was asked whether she saw Tyler after March, 1942, and she answered, "When he took my older sister off." An objection was sustained on the ground that that information was hearsay and, in answer to defendant's counsel's objection that the prosecutor was trying to show "some subsequent offense" the court clearly ruled that evidence of subsequent offenses would not be admissible. The father of prosecutrix, when asked what happened after March, 1942, said he didn't know anything about "this" until "they took our daughter off * * *." An objection to showing any subsequent events was sustained. Without detailing the other incidents referred to by defendant in support of his contention, suffice to say that in each instance where objection was made, it was sustained, except in one where no ruling was made and none insisted upon, and in another where an ob-

jection was overruled where the witness had not referred to any alleged separate offense.

■ It is abundantly clear from the record that the trial court did not err in its rulings as to references to or evidence of separate and distinct offenses allegedly committed by defendant and we are of the view that the trial court did not abuse its discretion in refusing to reprimand the prosecutor or to discharge the jury by reason of the incidents.

■ Defendant next contends that he was precluded from a fair trial because of prosecutor's remarks allegedly calling attention to his failure to testify. In the opening statement the prosecutor, referring to the escape of defendant from the county jail, said that the testimony on the part of Sam Tyler would be that the jail door was left open and he walked away. The court sustained an objection as to what defendant's testimony would be and stated in connection therewith, "* * * the Defendant doesn't have to take the stand." No objection was made to that remark and no further court action was requested by defendant. Other remarks in the prosecutor's closing argument are alleged to have referred to the defendant's failure to testify. We cannot agree that they did so refer, but, in any event, no objection was made to any of those statements and consequently defendant is in no position to now assert error in connection therewith. State v. Mosier, Mo., 102 S.W.2d 620, 628.

Defendant's next point is that he did not have a fair trial because of a combination of four incidents or matters. The first is that the prosecutor's remarks during colloquies with the court and in his argument to the jury were highly improper and prejudicial. It will serve no purpose to set forth each remark about which complaint is made. We have examined each of them and find that no objection was made at the time of any such remark and none of them were of the kind or nature calling for the unsolicited action of the trial court.

Thus, that portion of the "fair-trial" contention is without merit.

■ The record indicates that the prosecutrix, who, at trial time, was 25 years of age, married and the mother of children, at one point during her cross-examination began to cry. The court suggested that the witness compose herself. Defendant's counsel suggested that he had not caused prosecutrix to cry and moved for the discharge of the jury. The court suggested a short recess. No ruling was made on the request to discharge and no further action was requested by defendant's counsel. The record shows that following the recess the witness was examined further by defendant's counsel. The trial court in overruling the motion for new trial in which the alleged prejudice caused by the weeping of the prosecutrix was asserted, was of the view that no undue prejudice resulted therefrom. It is apparent that on the record before us we should not hold that the trial court abused its discretion in so ruling.

■ The third reason under the "fair-trial" argument is that a sister of the prosecutrix, after testifying, sat at the table with the prosecutrix. The defendant objected out of the hearing of the jury and suggested that she was conferring with the prosecutor and that she should remove herself in an unobtrusive way. The court said he had not seen her conferring with the prosecutor and said that he would declare a recess during which time she should be asked to sit in the audience. Such was done, and thereafter the court overruled defendant's request that the jury be discharged because of the incident. The mere description of the incident and the court's handling thereof is conclusive of the fact that the trial court did not abuse its discretion in refusing to discharge the jury.

■ The final incident complained of is defendant's charge that during his counsel's final argument to the jury, members of prosecutrix' family were "hissing and making noise" in the courtroom and that the

court refused to declare a mistrial therefor. The record shows that during defendant's counsel's argument, he stopped in the middle of a statement and stated that he objected "to this demonstration from the * * * family here in the courtroom and ask that the Court—that they desist from that." The court said, "Well, let's have order in the court now. Let's get along." Defendant's counsel proceeded with his argument without request for further action. In support of his motion for new trial, defendant's counsel testified that he heard hissing and heard one of the girls sitting there say something and the hissing came from that direction. Obviously, in the absence of any request by defendant to the court for further action at the time of the incident and in the absence of any showing of more details of the exact nature of the incident, the trial court did not err in failing to discharge the jury or in refusing to grant a new trial by reason thereof.

It follows that there is no merit in defendant's contention that he did not have a fair trial because of the four specific incidents relied upon, either singly or in combination.

■■■ Defendant contends that the court erred in giving instruction 3 on flight because it appeared that the defendant was confined at the time he escaped from or left that jail without permission on two charges of statutory rape alleged to have been committed on the prosecutrix, i. e., the one in May 1941 and the one on trial in March 1942, and that, consequently, it could not be determined from which charge defendant intended to escape; that his escape may have shown a consciousness of guilt of the charge for which he was not on trial. In State v. Green, Mo., 236 S.W.2d 298, 299, the court called attention to the existence of a rule that where a defendant is confined in jail under two or more separate and distinct charges and escapes, evidence of that escape, which ordinarily shows consciousness of guilt, is inadmissible upon the trial of either of the two or more sep-

arate charges, and that the reason usually given for the rule is that it is impossible to determine from which charge the defendant was escaping; that he may have escaped because of consciousness of guilt of the charge for which he was not on trial. The court in Green, however, correctly held that any reason for the application of that exclusionary rule could not exist in that case because defendant's own testimony made it clear that he had escaped because of the pendency of the charge on trial. The Green case did not hold, however, that the exclusionary rule there mentioned was the law in Missouri, nor was any approval given of the mentioned rule.

We are of the view that the cases wherein that rule has been applied have confused the admissibility of evidence with the weight to be given by a jury to the evidence adduced as to the circumstances of defendant's confinement and escape when he is confined on two or more charges at the time. That is to say, except in those instances where the trial court, as with any other issue, should declare as a matter of law that the evidence is insufficient for a jury reasonably to find that defendant escaped or fled wholly or partially on account of the pendency of the charge on trial, the question of whether an escape shows a consciousness of guilt of the offense on trial is a jury question. In Commonwealth v. Madeiros, 255 Mass. 304, 314; 151 N.E. 297, 299 [6], the court said: "Testimony that during his confinement before trial the defendant sawed the bars of his cell, assaulted the guard and attempted to escape, was admissible as tending to show consciousness of guilt. Commonwealth v. Brigham, 147 Mass. 414, 18 N.E. 167. Although not shown on the record, it was agreed at the argument that the defendant was at the time under two separate indictments, one for murder and one for putting persons in fear for the purpose of stealing from a bank. These circumstances did not render this evidence inadmissible. Its weight was for the jury." See, also, State v. Nienaber, 347 Mo. 615, 621, 148 S.W.2d 1024, 1027 [9]; People v. Keep, 123 Mich.

231, 81 N.W. 1097; Hicks v. State, 82 Tex. Cr.R. 254, 256, 199 S.W. 487, 488 [2]. Cf. State v. Whitney, 43 Idaho 745, 754, 254 P. 525, 527 [8].

There was evidence from which the jury reasonably could have found that the defendant escaped from the Bollinger County jail in September 1942 (when both the noted informations were pending) and was arrested in Texas in 1951. We are of the view that the jury also reasonably could have found that the escape of the defendant was caused in whole or in part by the pendency of the charge upon which he was being tried even though at the time of such escape he also was charged with another offense. Instruction 3 required the jury to find that defendant broke out of or left the county jail for the purpose and with the intent to avoid trial for "such alleged statutory rape," and only if it so found was it to consider such flight in connection with the other evidence in the case on the question of defendant's guilt or innocence.

Defendant also contends that instruction 3 should, in any event, have instructed that if the defendant did not flee to avoid prosecution for the offense on trial, then flight was no evidence of his guilt. That is simply the negative of what the instruction affirmatively stated. Certainly there was no reason for such amplification in the absence of any request therefor by defendant.

We note that the instruction refers to "intent to avoid trial for such alleged statutory rape." While it is true that there were two alleged statutory rape charges then pending involving this prosecutrix and this defendant, nevertheless, the jury was not aware thereof from anything that occurred in the instant trial, and consequently the jury could not but have understood that "such alleged statutory rape" referred to the one on trial. We hold that the court did not err in giving instruction 3.

 Defendant contends the court erred in refusing to give instruction 7

submitting the failure of prosecutrix to make outcry or timely complaint. Defendant was not entitled to the instruction. It has been held that the fact of delay in making complaint in a prosecution for rape of a female under the age of consent is not a matter for instruction, even though there is evidence that such rape was accomplished by force and even though delay in complaining may be shown in evidence and commented on in argument. State v. Richardson, 349 Mo. 1103, 1111 [5], 163 S.W.2d 956, 961 [10, 11] [12]. The same rule necessarily would apply to failure to make outcry at the time of the act of intercourse.

 Defendant contends in his brief that the court erred in giving instruction 4 which was an instruction on the presumption of innocence and the burden of proof. The reason assigned is that the last sentence incorrectly defined reasonable doubt. The only reference in defendant's motion for new trial to the last sentence of instruction 4 is that it was "a comment on the evidence." Consequently, the error now urged as to instruction 4 was not preserved for appellate review.

 Defendant finally contends that the court erred in giving instruction 5 which was an instruction on the credibility of witnesses. Defendant argues that inasmuch as he did not testify and did not offer any evidence, there was no basis for a credibility instruction. This court held to the contrary in State v. Swisher, 364 Mo. 157, 167 [3], 260 S.W.2d 6, 14 [16–18]. Therein it was pointed out that if the giving of such an instruction was erroneous, it was error favorable to the defendant; that a defendant could not have been prejudiced by telling the jury to disregard false testimony.

We have examined those record matters not required to be preserved or presented for review and find no prejudicial error therein.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.