**The People of the State of Illinois, Plaintiff-Appellee, v. Fred Neiman, Defendant-Appellant.**

**Gen. No. 67–46.**

Second District.

December 21, 1967.

LeFevour & Bailey, of Oak Park, for appellant.

William Ketcham, of Geneva, and W. Ben Morgan, of Elgin, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment entered in the Circuit Court of the 16th Judicial Circuit on the verdict of a jury which found the defendant guilty of armed robbery, on July 13, 1964, of the Fox Valley Country Club and its proprietors, Dal and Jean Whittle, and the attendant sentence of the defendant to the Illinois State Penitentiary for not less than fifteen nor more than twenty years.

The defendant contends that his conviction must be reversed because of the admission of certain evidence concerning an attempted jailbreak on December 21, 1964. It is his position, first that such evidence is inadmissible in any event, and secondly, that it must be inadmissible in this case in that, at the time he was incarcerated, more than one criminal charge was pending against him, and the evidence reflects no connection between the alleged jailbreak attempt and the charge in the indictment. He

also asserts that error was committed in the method by which the State introduced evidence of the attempted jailbreak and by virtue of the prosecutor's use of evidence of a police lineup in which he was identified by the victims of the robbery.

The State urges that the evidence of the attempted jailbreak was properly admitted; that flight or attempted escape shows a consciousness of guilt or raises a presumption of it; and that the court did not err in permitting the two victims of the robbery to testify as to their identification of the defendant in a lineup at the Chicago Police Station, since they also positively identified him at the preliminary hearing and also at the trial.

Both Dal and Jean Whittle testified that the Fox Valley Country Club was robbed on the night of July 13, 1964. The Whittles—the owners and operators of the Club—were alone in the well-lighted Club about closing time when two men, one with a gun in hand, entered and stated that this was a holdup. The defendant, Neiman, who had neither hat nor mask, carried the gun. His accomplice ordered the Whittles to stand against the wall and later they were directed to lie on the floor, face down. Neiman's accomplice had difficulty opening one cash register and Jean Whittle was permitted to get up to assist in opening the cash drawer of the register. Money was taken from Dal Whittle's pockets. Both of the Whittles had ample opportunity to observe the defendant throughout the course of the robbery. During its progress, the defendant's revolver was discharged and he told the Whittles not to worry; that it was an accident; and that if they would lie still and be quiet they wouldn't get hurt.

On September 13, 1964, the defendant voluntarily surrendered at the Shakespeare Police Station in Chicago for questioning in connection with certain unsolved crimes. The next day he was placed in a lineup at this station at which the victims of several robberies which

340

had occurred in Kane County were present, along with officers from the Kane County Sheriff's office. At this lineup, Dal and Jean Whittle identified the defendant. Prior to this time no one had pointed him out to them. Jean Whittle identified the defendant by placing her hand on his shoulder. After identifying the defendant, she requested that he speak, and when he spoke she recognized his voice. The record does not indicate that the defendant was represented by counsel at the lineup on September 14, 1964.

On December 21, 1964, subsequent to the time when Neiman was indicted, one of the deputy sheriffs of Kane County—while investigating a tip given by Billy Alston, a jail inmate—searched the cell block in which the defendant and others were incarcerated and found hacksaw blades, a rope made from trousers and other evidence indicative of preparation to escape. Such facts were testified to by the deputy sheriff. On cross-examination of the deputy, counsel for the defendant elicited the fact that Billy Alston, the tipster, had told the deputy that the defendant had lowered a string from the jail to pull in the hacksaw blades and had planned the jailbreak; and that Alston also told the deputy that he (Alston) had seen the defendant sawing the bars.

The defendant testified on his own behalf. He stated that he had spent approximately 25 years of his life in Illinois penitentiaries; that a pending conviction had been reversed by the Supreme Court and this case was set for a new trial in Cook County on Monday, January 11, 1965. He denied that he had ever been in the Fox Valley Country Club or that he had anything to do with its robbery on July 13, 1964. He admitted that he appeared with four other men in the lineup in question, and that Mrs. Whittle identified him.

His testimony relative to the attempted jailbreak was as follows:

"Q. Now then in connection with this matter at at the County Jail on or about December 21, 1964, will you tell the Court and Jury what if anything you know about your being involved in this attempted jail break?

"A. 11 or 12 men in the County Jail at the time.

"Q. In your cell block?

"A. In my cell block, 3 north. Just to say who had anything sent in I would be lying, I don't know.

"Q. Did you yourself have anything to do with sawing any bars or bringing any blades in or concealing any blades?

"A. Mr. Lasswell, I know nobody in this territory. I haven't had a visit in six weeks down here from nobody. I know nobody from here."

While the defendant urges that his conviction should be reversed because of the admission of evidence tending to show his attempted jailbreak from the Kane County jail, he cites no Illinois cases to sustain his position. Under the law of this State, evidence of flight of an accused or his attempted escape generally raises no legal presumption that he is guilty of the crime charged against him. In People v. Kidd, 410 Ill 271, 102 NE2d 141 (1951) at page 277 the court stated:

"The fact that he attempted to prevent his arrest by flight, when approached by officers some days later, was competent evidence indicative of a guilty mind. (Jamison v. People, 145 Ill 357.) However, the fact that he fled when approached by police officers, raises no legal presumption that he is guilty of the particular crime charged in the indictment. The fact of flight is a circumstance which may be considered by the jury in connection with all the other facts and circumstances in evidence as tending to prove guilt. (People v. Weber, 401 Ill 584; People v.

Schaffner, 382 Ill 266; People v. Herbert, 361 Ill 64.)"

Also see: People v. Davis, 14 Ill2d 196, 202, 151 NE2d 308 (1958). Flight or attempted escape is a circumstance which may be considered as tending to cast suspicion on the testimony of an accused if it conflicts with that of other witnesses (People v. White, 311 Ill 356, 363, 143 NE 108 (1924)), and, in connection with all other evidence in the case, as tending to prove his guilt. People v. Herbert, 361 Ill 64, 73, 196 NE 821 (1935).

■ The circumstance of flight, where proven, raises no legal presumption that the accused is guilty of the offense charged against him. It may be considered in connection with all of the other evidence in the case which tends to prove his guilt. People v. Herbert, supra. In People v. Brothers, 347 Ill 530, 180 NE 442 (1932) at page 540 the court stated:

> "By the common law flight was considered so strong a presumption of guilt that in cases of treason and felony it carried the forfeiture of the party's goods, whether he were found guilty or acquitted. (1 Wharton on American Crim Law, sec 714.) In this country flight does not generally raise a presumption of guilt but may be shown in evidence as a fact to be considered by the jury and from which they may draw an inference of guilt. (Fox v. People, 95 Ill 71; 16 Corpus Juris, 551.)"

■ However, as a corollary rule, evidence explaining testimony which has been admitted or explaining a fact in evidence, if competent, is generally admissible. In People v. Autman, 393 Ill 262, 65 NE2d 772 (1946), at pages 266 and 267, the court stated:

> "Proof of flight by the accused in a criminal case is admissible as a circumstance tending to show con-

343

sciousness of guilt. It is only a circumstance which may be considered by the jury as tending to prove guilt and must be considered in connection with all the other evidence in the case. (People v. Herbert, 361 Ill 64.) In the case cited, this court said that flight, in criminal law, is defined as 'the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and purpose is that which gives to the act of leaving its real incriminating character.' In all cases the defendant has a right to show, by any competent evidence, facts which tend to prove that he did not leave the scene of the crime from a consciousness of guilt, but that his act in leaving was consistent with his innocence. People v. Bundy, 295 Ill 322."

■ Evidence of the escape or attempted escape of an accused after his arrest and while being taken to jail (People v. Gambino, 12 Ill2d 29, 32, 145 NE2d 42 (1957)), or from jail while awaiting trial (People v. Gambino, supra) is admissible. Some cases state that it is competent to prove the escape or attempted escape from custody as a fact tending to raise a presumption of the guilt of the accused of the crime of which he is charged. People v. Gambino, supra; People v. Talbe, 321 Ill 80, 91, 151 NE 529 (1926). However, if such circumstance does create a presumption of guilt, then such presumption is certainly rebuttable and may be explained. In People v. Rappaport, 362 Ill 462, 200 NE 165 (1936), at page 468, the court stated:

"Defendant's flight was a circumstance tending to prove his guilt and could be shown by the People.

344

On the other hand, if there were circumstances which would tend to explain or excuse the flight, defendant had the right to show them. Flight from the scene of a tragedy may be as consistent with innocence as with guilt. It is not always dictated by impulse or purpose to escape the consequences of acts done or charges that may be made. If the flight is unexplained, it may permit an inference of guilt, but it has no such significance when the conduct of the accused is equally, or more, consistent with some other hypothesis."

Also see: People v. Bundy, 295 Ill 322, 329, 330, 129 NE 189 (1920).

Perhaps the better statement of the rationale for the admission of such evidence is found in Jamison v. People, 145 Ill 357, 34 NE 486 (1893), at page 376, where the court stated:

"In criminal cases, a portion of the evidence laid before the jury often consists of the conduct of the party, either before or after being charged with the offense, presented not as a part of the res gestae of the criminal act itself, but as indicative of a guilty mind. Roscoe's Crim Ev, 18."

Also see: People v. Limeberry, 298 Ill 355, 370, 131 NE 691 (1921).

In view of the foregoing citations, it is beyond dispute that generally the evidence of the attempted escape in the case at bar was admissible. However, the defendant argues that the attempted escape, while he was incarcerated with more than one criminal charge pending against him, reflects no connection between the attempt and the charge under which he was indicted, and that he may have sought to escape because of the other charges or for other distinct reasons.

██ Under Illinois law, the defendant could offer proof relative to any circumstance which would tend to

explain or excuse his attempted escape, if any, and such evidence would be considered by the jury with all other circumstances in the case. People v. Rappaport, supra, 468. The defendant did offer testimony relative to the other charges which were also currently pending against him, and such testimony was admitted in evidence. Therefore, we can only conclude that this testimony was considered by the jury, along with all other evidence in arriving at its verdict.

██ In addition, from a pragmatic viewpoint, we see no reason to alter the existing rules of evidence under the circumstances at bar. It would seem inappropriate to hold evidence of attempted escape inadmissible against an accused who was awaiting trial on various charges, and to admit such evidence against the accused who was charged with only one offense. Such procedure would reward the professional criminal and punish the neophyte. Also, the defendant cannot complain with reference to the testimony which he elicited from the deputy sheriff on cross-examination with reference to the attempted escape. Consequently, we find no error in the admission of the evidence relative to the attempted escape.

The defendant also charges error in that evidence was admitted concerning a police lineup in which the defendant was identified by Dal and Jean Whittle. The record establishes that the Whittles saw the defendant at the time of the robbery for an extended period of time, without a mask and in a well lighted room, and subsequently saw him at the lineup, at the preliminary hearing, and at the trial. On each occasion they identified the defendant.

Five men, including the defendant, were in the lineup and the Whittles identified him without any other person pointing him out to them.

██ ██ In People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599 (1959), at page 464, the court stated:

". . . where an accused is not selected from a group, such fact does not render evidence of identification

incompetent, but only affects its weight. (People v. De Suno, 354 Ill 387; People v. Barad, 362 Ill 584; People v. Dustin, 385 Ill 68.) Similarly, where claim is made that identification was induced by police suggestion that the guilty party is in custody, we have stated such procedure does not completely destroy the evidence of identification, but affects only its weight and credibility. (People v. Wilson, 1 Ill2d 178; People v. Tomaszewski, 406 Ill 346; People v. Sanders, 357 Ill 610.)"

▮ The defendant has suggested that the lineup in question and its attendant identification of the accused, who then was without counsel, is subject to all the infirmities described in United States v. Wade, 388 US 218, 18 L Ed2d 1149, 87 S Ct 1926, and in Gilbert v. California, 388 US 263, 18 L Ed2d 1178, 87 S Ct 1951. However, both counsel for the defendant and the State recognize that under the decision of Stovall v. Denno, 388 US 293, 18 L Ed2d 1199, 87 S Ct 1967, the newly asserted requirement of counsel at a lineup, as a right guaranteed under the Sixth Amendment to the Constitution of the United States, is not applicable to lineup confrontations taking place prior to June 12, 1967, the date of the Wade and Gilbert decisions. Consequently, absent the retroactivity of the Wade and Gilbert doctrine, such decisions have no application to the case at bar. In addition, the totality of the evidence does not indicate that the identifications of the defendant at the preliminary hearing and at the trial were in any way tainted by the procedures employed at the lineup. The defendant has not asserted any due process constitutional issues arising thereby and the evidence does not indicate the presence of such issues.

▮ Consequently, under the law applicable to this case, a positive identification by one witness was sufficient for conviction. People v. Mack, 25 Ill2d 416, 421, 185 NE2d 154 (1962); People v. Crenshaw, supra, 461;

347

People v. Nicholson, 55 Ill App2d 361, 367, 204 NE2d 482 (1965). In the case at bar, both Dal and Jean Whittle positively identified the defendant at the lineup, at the preliminary hearing, and at the trial.

We find no error in the record, and, consequently, the judgment of the trial court should be affirmed.

Judgment affirmed.

MORAN and ABRAHAMSON, JJ., concur.