STATE of Missouri, Respondent,

v.

Steven L. HUGHES, Appellant.

No. 61616.

Supreme Court of Missouri,
En Banc.

April 8, 1980.

Scott B. Tinsley, Springfield, for appellant.

John Ashcroft, Atty. Gen., Mary C. P. Pincus, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Steven L. Hughes, was convicted of first degree robbery by means of a dangerous and deadly weapon, § 560.135, RSMo Supp.1975, and felony car tampering, § 560.175, RSMo 1969. He was sentenced to consecutive terms of thirty years' imprisonment for the robbery and five years' imprisonment on the tampering offense. Appellant seeks reversal of his convictions, alleging that the trial court erred in admitting into evidence statements made by appellant to police investigating the robbery, in admitting into evidence a gun allegedly used in the robbery, and in admitting in evidence testimony concerning appellant's escape from custody pending trial. The case was transferred from the Court of Appeals, Southern District, after opinion, and we decide it as though on original appeal. Mo. Const. art. V, § 3. We affirm.

On December 28, 1976, at approximately 7:00 p. m., a white pickup truck with a red top was "hot-wired" and stolen from the parking lot of Battlefield Mall in Springfield, Missouri. Approximately one half hour later two men in a red and white pickup stopped in front of an Apco service station located on the Skaggs shopping center parking lot on South Glenstone Avenue in Springfield. The man on the passenger side of the truck entered the station, displayed a short barrelled, rusted, .22 caliber revolver, and robbed the lone attendant Barry Bertram of approximately two hundred and twenty dollars. The two men then drove across the parking lot, abandoned the pickup, and joined a third man who drove them to Joplin, Missouri.

On January 13, 1977, Officers Wells and Phillips of the Joplin Police Department arrested Charles Bruce Miller, Jr., at his apartment in Joplin in connection with multiple robberies in the Joplin area. The officers found a .22 caliber revolver in Miller's apartment and collected it as evidence in a Joplin robbery. As a result of information obtained from Miller concerning the gun and the Joplin robberies, the same officers arrested appellant early the next morning at his home in Joplin for investigation of illegal sale of a firearm. Officers Wells and Phillips later arrested Donald Trimble in connection with the investigation of the Joplin robberies.

On January 14, 1977, Officers Wells and Phillips questioned appellant concerning offenses in the Joplin area. The officers also questioned Miller and Trimble individually and then together with appellant. From the interviews, the officers gathered information implicating the three in the Springfield Apco station robbery. Three days later, Officers Hobson and Brinkman of the Springfield Police Department interviewed the appellant in Joplin concerning the Springfield service station robbery. On both occasions, the officers advised appellant of his *Miranda* rights and obtained appellant's signature on forms which indicated that he understood his rights and that he waived his right to remain silent and his right to counsel. On both occasions appellant made a statement detailing his role in the Springfield robbery. In addition, appellant implicated himself in a number of Joplin crimes to the Joplin officers.

In subsequent proceedings, appellant was charged with burglary and stealing arising out of the incidents in the Joplin area. Appellant pleaded guilty to those charges and was sentenced to two years in the Missouri Department of Corrections. On June 24, 1977, he was transferred to the Greene County Jail in Springfield to await trial for the Apco station robbery. In the early morning on August 30, 1977, appellant escaped from jail with two other prisoners but was recaptured within twenty minutes of his escape.

On September 16, 1977, appellant filed a pre-trial motion to suppress evidence of statements made to the Springfield Officers Hobson and Brinkman on the ground that the statements were made involuntarily and

were made in reliance upon a promise of leniency made by Officer Phillips in an interview with appellant the afternoon of his arrest. The court overruled the motion after a pre-trial hearing into the voluntariness of the statements. On December 6, 1977, the day before trial, appellant filed a written motion to suppress evidence of statements made to Joplin Police Officers Wells and Phillips, alleging that they were made in reliance upon Officer Phillip's promise of leniency. On December 6, 1977, appellant filed a written motion in limine to prevent the state from referring to or producing a handgun and a mugshot of appellant in the presence of the jury until the state established the relevance, materiality and competence of those items out of the jury's hearing. The trial court overruled both the motion to suppress and the motion in limine on the first day of trial.

Barry Bertram testified at trial, and identified appellant as the person who demanded the money from him at gunpoint. He also identified the pickup truck from a photograph of the stolen pickup as the vehicle used in the robbery. He also testified that State's Exhibit 4, the gun found in Miller's apartment, looked exactly like the gun used in the robbery.

The Joplin and Springfield officers testified that appellant made statements on two separate occasions in which he admitted to driving the truck in the Apco station robbery.[1] The officers testified that appellant stated that he, Trimble and Miller had stolen the pickup from a shopping center parking lot, he and Trimble committed the robbery, and that he and Trimble then met with Miller, who drove them back to Joplin. Officer Wells also testified that, when questioned about the .22 caliber revolver found in Miller's apartment, appellant stated that he had sold the gun to Miller. Officer Phillips identified State's Exhibit 4 as the gun taken from Miller's apartment.

Deputy Sheriff Otis Hoppe testified that while he was working at the Greene County Jail on the morning of August 30, 1977, he observed three men running from the jail. He stated that he found a basement window loosened, and afterwards determined that appellant was one of three men who were missing from the jail. Deputy Hoppe also testified that appellant and one of the other escapees were brought back to the jail approximately twenty minutes later. Lieutenant Raymond Hargrove of the Springfield Police Department testified that he received a radio dispatch at 2:55 a. m. on August 30, 1977, about an escape of prisoners from the Greene County Jail, and that he apprehended appellant about six blocks from the jail shortly thereafter.

Appellant testified, and denied that he admitted to participation in the Apco station robbery, or to the sale of the gun to Miller. He admitted his escape from the Greene County Jail, but explained that his motive for escaping was to see his month-old son. On direct examination, appellant denied that he had understood his rights at the time he was questioned by the Joplin and Springfield police officers; however, on cross-examination he stated several times that he had understood his rights at the time that the officers questioned him. Appellant also testified in the pre-trial hearing on the motion to suppress evidence of statements made to the Springfield officers that Officer Phillips had promised him that if he confessed to the Joplin burglary, Phillips would "do his best to prevent other charges being filed against me." Appellant claims that he relied on that promise in his conversations with the Joplin officers and that he continued to rely on that promise when he was questioned by the Springfield officers.

On December 8, 1977, the jury found appellant guilty of first degree robbery and felony car tampering. On December 19, 1977, appellant's motion for a new trial was considered and overruled and consecutive

---

1. This evidence is corroborated by the statements given by Trimble and Miller, but is inconsistent with the testimony of Barry Bertram, who firmly maintained that appellant was the gunman. The jury was properly instructed that it could find appellant guilty under each count if it believed that appellant "acted either alone or knowingly and with common purpose together with another."

sentences of 30 years' imprisonment for first degree robbery and five years' imprisonment for car tampering were imposed. On December 21, 1977, appellant filed a notice of appeal with the Circuit Court of Greene County. On July 20, 1979, the Court of Appeals, Southern District, filed a written opinion to affirm appellant's conviction and on August 8, 1979, the court of appeals overruled appellant's motion for rehearing or transfer to this Court. On appellant's application, we ordered the case transferred to this Court on September 11, 1979.

Appellant alleges that it was error for the trial court to admit three types of evidence: (1) the testimony of the Joplin and Springfield police officers concerning statements which appellant made to them; (2) the handgun that was introduced into evidence; and (3) the testimony concerning appellant's escape from the custody of the Greene County Jail while awaiting trial on the robbery and car tampering charges. We will consider each allegation of error separately.

I.

Appellant contends the trial court erred in failing to suppress evidence of his oral confessions. Appellant denies confessing involvement in the Springfield robbery and maintains that any statements made pertaining to that incident were induced by a promise allegedly made by Officer Wells that if appellant cooperated, Wells "would make sure I got charged with only one charge and one charge, only." Appellant claims he relied on the promise of leniency when he made statements concerning the robbery in Springfield to the Joplin and Springfield police officers.[2]

▆▆▆ The admissibility of a confession depends upon whether it was compelled within the meaning of the Fifth Amend-

ment to the United States Constitution. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). " '[A] confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). *Accord, Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1962). Voluntariness of a confession, like that of a plea of guilty, "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749, 90 S.Ct. at 1469. *See State v. Hutson*, 537 S.W.2d 809, 811–13 (Mo.App.1976).

▆▆▆ When a criminal defendant alleges that his inculpatory statements, made while he was held in custody, are not admissible because involuntarily made, the state must bear the burden of proving the voluntariness of the confessions. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). A confession is admissible if the state proves by a preponderance of the evidence that it was voluntary. *Lego v. Twomey*, 404 U.S. 477, 482–87, 92 S.Ct. 619, 623–25, 30 L.Ed.2d 618 (1972); *State v. Olds*, 569 S.W.2d 745, 751–52 (Mo. banc 1978). The state must show that "defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them." *State v. Alewine*, 474 S.W.2d 848, 851 (Mo. 1971).

---

2. Appellant relies on *State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976). The Court in *Hoopes*, reversed a criminal conviction, stating that "[w]hen statements are obtained from an accused upon promises of leniency in return for a plea of guilty and the plea of guilty is aborted, the admissions obtained pursuant to the agree-

ment, in the words of Meyers and Abel, supra, should 'never have been heard of again.' " 534 S.W.2d at 37. *Cf. Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The holding in *Hoopes* is not applicable to the facts of this case.

■ The determination of the voluntariness of a statement is made in the first instance by the trial court. The trial court must determine the credibility of witnesses, and where evidence is in conflict, make factual findings. On appeal, the question is "whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given." *Alewine*, 474 S.W.2d at 852.

■ The trial court heard evidence of statements made to police officers, and the court found that the statements were made voluntarily and were admissible into evidence. The jury was also instructed concerning the issue of voluntariness and told to disregard the confessions if they found the statements were made involuntarily. *See State v. Kurtz*, 564 S.W.2d 856, 860 (Mo. banc 1978). The record shows that appellant was given the required warnings required by *Miranda v. Arizona*, 384 U.S. at 467–71, 86 S.Ct. at 1624–26, on at least three occasions and that he understandingly declined to exercise his right to remain silent. The Joplin officers read the *Miranda* warning to appellant upon his initial arrest. Before appellant made a statement to Joplin Police Officers Wells and Phillips on the day of his arrest, the officers read a statement to appellant, informing him that he had the right to remain silent and the right to counsel. Appellant signed a document indicating that he had read and understood the statement of rights and that he was willing to make a statement and answer questions, and that he did not want a lawyer at that time. Immediately above appellant's signature was the statement that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Officers Wells and Phillips testified both at trial and in the pretrial hearing on the motion to suppress statements made to the Joplin officers that no one in their presence at any time made a promise of leniency to induce appellant to cooperate, to sign the waiver form, or to answer their questions. Officer Phillips specifically denied in the pre-trial hearing that anyone had promised appellant "that he would only be charged with one crime in Jasper County if he confessed to numerous other crimes." Before appellant made a statement to Springfield Police Officers Hobson and Brinkman three days after his arrest, the officers read a statement of rights to appellant, and appellant again signed a document indicating that he understood his rights to remain silent and to counsel, and that he waived his rights to silence and to counsel. Contained in this waiver form was the statement that "I have had the above statements of my rights read and explained to me and fully understanding these rights, I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." Officers Hobson and Brinkman testified at trial that no one made any threats or promises of leniency to the appellant to persuade him to talk to them.

Appellant recites the conflicting testimony on whether the statements were induced by promises, and emphasizes alleged inconsistencies in the officers' testimony as to when and to whom the confessions were made. Appellant suggests that the failure to make a written record of the confessions renders their existence questionable. The officers on the other hand, unequivocally testified that no promises were made, that appellant requested that his statements not be recorded, and that it was common practice to take oral statements. Officer Hobson did take notes on a legal pad of the confession made to the Springfield officers which were later transcribed into the police record. We find that there was sufficient evidence in the record to support the trial court's initial finding that appellant knowingly waived his rights and that appellant made the statements in question voluntarily and not in reliance on promises of leniency. We also find that the evidence was sufficient to support a jury finding that appellant made the statements freely and voluntarily.

II

■ Appellant also challenges the admissibility of the .22 caliber revolver found in

Charles Miller's apartment. Appellant contends the weapon lacked probative value because it was not positively identified and because there was no evidence directly connecting the gun to him. It is a general rule that weapons "not connected with the defendant or the crime are not admissible unless they possess some probative value." *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 299 (1944). In *State v. Cuckovitch*, 485 S.W.2d 16, 23 (Mo. banc 1972), a revolver found in the defendant's room was not identified as the one used in the murder charged, but because the gun was in the possession of the defendant at the time of arrest and was shown to be similar to the murder weapon, it was held properly admitted into evidence. The Court stated:

> [A] weapon or instrument found in the possession of accused or *of his criminal associates* which, although not identified as the one actually used, is similar in form and character thereto, or which, *from the circumstances of the finding* justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred . . . .

*Id.* at 23, quoting 22 C.J.S. Criminal Law § 712, p. 966 (Emphasis added.)

■ Appellant emphasizes that the gun was found over two weeks after the robbery and that it was not found in the possession of the appellant. He also argues that because Mr. Bertram did not testify that State's Exhibit 4 was in fact the same revolver as that used in the robbery admission of the weapon was reversible error. Identification of a weapon allegedly used in the commission of a crime need not be wholly unqualified in order to make the instrument itself admissible. *State v. Kern*, 447 S.W.2d 571, 575 (Mo.1969); *State v. Maxwell*, 376 S.W.2d 170, 174 (Mo.1964); *State v. Johnson*, 286 S.W.2d 787, 791 (Mo. 1956). Mr. Bertram described the weapon

used in the robbery according to its barrel length, coloring and muzzle size. He described it as "a small gun, short barrel . . . kind of dirty . . . kind of a rust on it." Bertram testified that the caliber of the weapon used in the robbery "was right on .22 [caliber]." Bertram testified concerning the difference between a revolver and an automatic, and stated that the weapon used in the robbery was a revolver. Bertram then was shown State's Exhibit 4, and testified that the gun "looks exactly like the weapon that was used to rob me." Bertram identified appellant as the man who held the revolver during the robbery. The weapon was found in the possession of Charles Miller, and Officer Wells testified appellant stated that he had sold the weapon to Miller. The testimony of Wells and Bertram together established sufficient connection between the gun in question and the crime charged, and between the gun and appellant, to justify admitting the weapon into evidence.

### III

■ Appellant contends that the trial court erred in admitting evidence of appellant's escape from jail while awaiting trial. Appellant concedes that evidence of escape is generally admissible as bearing on appellant's consciousness of guilt of the pending charges, and that this Court has held evidence of escape admissible even when the criminal defendant was being held on two or more distinct charges at the time of the escape. *State v. Collett*, 542 S.W.2d 783, 787 (Mo. banc 1976); *State v. Tyler*, 306 S.W.2d 452, 459 (Mo.1957).[3] Appellant argues, however, that evidence of escape has only minimal probative value, and that in this case the prejudicial impact of the escape evidence outweighs its probative value.

In *State v. Tyler*, 306 S.W.2d 452 (Mo. 1957), the defendant escaped jail while two charges of statutory rape were pending.

---

**3.** It may be noted that under MAI–Cr 5.40, no instruction in flight or counter-flight is permissible, but "[e]vidence of a defendant's flight and any explanation or excuse therefor is ad-

missible. In addition, counsel may draw the jury's attention to the evidence and argue permissible inferences or lack of them to the jury."

The Court discussed a rule adopted in some jurisdictions that evidence of a defendant's escape while awaiting trial for two or more distinct charges is not relevant to show he is guilty of either.[4] The Court rejected the rule that such evidence should be excluded, stating:

> We are of the view that the cases wherein that rule has been applied have confused the admissibility of evidence with the weight to be given by a jury to the evidence adduced as to the circumstances of defendant's confinement and escape when he is confined on two or more charges at the time. That is to say, except in those instances where the trial court, as with any other issue, should declare as a matter of law that the evidence is insufficient for a jury reasonably to find that defendant escaped or fled wholly or partially on account of the pendency of the charge on trial, the question of whether an escape shows a consciousness of guilt of the offense on trial is a jury question.

306 S.W.2d at 459. Subsequent cases involving multiple charges have followed *Tyler*. *State v. Collett*, 542 S.W.2d 783, 787 (Mo. banc 1976); *State v. Guinan*, 506 S.W.2d 490, 492 (Mo.App.1974); *State v. Hudson*, 491 S.W.2d 1, 3 (Mo.App.1973).

In *State v. Collett*, 542 S.W.2d 783, 787 (Mo. banc 1976), the defendant escaped while awaiting trial on multiple charges. The Court noted that while the point was not properly preserved for review, it was not error to admit evidence of the escape in the defendant's trial for robbery, citing *State v. Hudson*, 491 S.W.2d 1 (Mo.App. 1973).

In *Hudson*, the defendant was charged with two separate robberies of the same person. Evidence of the defendant's escape pending trial was introduced in a trial for one of the robberies, and the defendant appealed his conviction. In affirming the conviction, the court stated:

> There is no question that the law of Missouri has been and is that flight and escape may be shown as bearing on the issue of guilt. [Citations omitted.] Evidence of escape, even though the defendant is confined on two or more separate charges, is admissible, the weight to be determined by the jury.

*Id.* at 3.[5]

Appellant seeks to distinguish *Tyler* and the cases following *Tyler* from the instant case. He emphasizes that *Tyler* involved two charges that were pending at the time

---

4. This "exclusionary rule" was adopted in two early cases, *People v. McKeon*, 64 Hun 504, 505, 19 N.Y.S. 486, 487 (1892), and *State v. Crawford*, 59 Utah 39, 201 P. 1030, 1033 (1921). New York has since abandoned the rule. *People v. Yazum*, 13 N.Y.2d 302, 196 N.E.2d 263, 264–65, 246 N.Y.S.2d 626 (1963). In *Crawford*, the escape evidence was the only evidence connecting the defendant to the offense. The reason usually given for the exclusionary rule "is that it is impossible to determine from which charge the defendant may have escaped and fled, he may have fled because conscious that he was guilty of the charge for which he was not on trial." *State v. Greene*, 236 S.W.2d 298, 299 (Mo.1951). *See generally*, 22A C.J.S. Criminal Law § 631, pp. 478–80.

One consequence of this rule would be to permit evidence of escape against a person charged with only one offense but to exclude such evidence against a person charged with multiple offenses. "Such procedure would reward the professional criminal and punish the neophyte." *People v. Neiman*, 90 Ill.App.2d 337, 232 N.E.2d 805, 809 (1967).

5. Courts in other jurisdictions have held evidence that the defendant escaped or attempted to escape from custody while awaiting trial on multiple charges is admissible in a trial on one of the charges. *Centeno v. State*, 260 Ark. 17, 537 S.W.2d 368, 369 (1976); *Johnson v. State*, 312 A. 630, 632 (Del.1973); *People v. Neiman*, 90 Ill.App.2d 337, 232 N.E.2d 805, 807–09 (1967); *People v. Yazum*, 13 N.Y.2d 302, 196 N.E.2d 263, 264–65, 246 N.Y.S.2d 626 (1963); *Archie v. State*, 488 P.2d 622, 623 (Okl.Cr.App. 1971); *Chapple v. State*, 528 S.W.2d 62, 63 (Tenn.Cr.App.1975); *Hodge v. State*, 506 S.W.2d 870, 873 (Tex.Cr.App.1974); *State v. Piche*, 71 Wash.2d 583, 430 P.2d 522, 524, *cert. denied*, 390 U.S. 912, 88 S.Ct. 838, 19 L.Ed.2d 882 (1967).

A fact situation similar to the case at bar is present in *People v. Keep*, 123 Mich. 231, 81 N.W. 1097 (1900). In *Keep*, evidence that the defendant escaped from jail pending trial on charges of robbery and larceny was held properly admitted, even though the defendant was serving a sentence for a misdemeanor conviction at the time of the escape.

of escape while in this case appellant was confined on burglary and stealing convictions for which he already had been sentenced to a certain term of confinement, a term which would not be affected by the outcome of the trial on the robbery and car tampering charges. Appellant contends that this circumstance renders the evidence of escape insufficient as a matter of law for the jury to find that he escaped on account of the pending charges. Appellant testified at trial that his escape was not motivated by consciousness of guilt of the robbery and car tampering offenses, but that the escape was motivated solely by the desire to see his month-old son.

We do not consider the instant case sufficiently distinct from *Tyler* to warrant a different result. Even if appellant escaped to avoid serving the sentences on the burglary and stealing convictions, this does not necessarily mean that appellant did not also escape to avoid conviction on the pending charges. This is not a case in which the evidence of escape is insufficient as a matter of law for a jury to find that appellant escaped "wholly or partially on account of the pendency of the charge on trial." *Tyler*, 306 S.W.2d at 459. Consequently, whether appellant's escape pending trial was motivated by consciousness of guilt or by some other consideration was a question of fact properly left for the jury. The existence of circumstances which indicate the escape was not motivated by consciousness of guilt may be considered by the jury to reduce the weight of the escape evidence, but it does not render the escape evidence inadmissible. We reject appellant's contention that the inference to be drawn from evidence of his escape is sufficiently ambiguous to merit exclusion of the evidence.

For the foregoing reasons, we find no error in the judgment of the trial court. The judgment is affirmed.

All concur.