James Eddie BRYANT,
Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 11346.

Missouri Court of Appeals,
Southern District,
Division 2.

Aug. 4, 1980.

Appellant's Motion for Rehearing and for Transfer Denied Aug. 20, 1980.

Application to Transfer Denied
Oct. 15, 1980.

David P. Anderson, Springfield, for movant-appellant.

John Ashcroft, Atty. Gen., Mary C. P. Pincus, Steven W. Garrett, Asst. Attys. Gen., Jefferson City, for respondent.

MAUS, Judge.

This is an appeal from a judgment denying the appellant's motion for post conviction relief filed under V.A.M.R.Crim. Rule 27.26. Appellant was charged with the felony murder of Clarence Lamb on December 7, 1974. After a five-day trial producing a transcript of 1143 pages, on July 11, 1975, the jury returned a verdict of guilty. The appellant's motion for a new trial presenting 20 points of alleged error was heard and overruled. He was sentenced to life impris-onment. His conviction was affirmed by this court. *State v. Bryant,* 558 S.W.2d 269 (Mo.App.1977). In his pro se 27.26 motion, the appellant alleged in general terms nine points for relief. Diligent appointed counsel amplified these points and added four additional points. An extensive evidentiary hearing was held. Upon thorough and painstaking analysis of the points raised and evidence presented, the 27.26 trial court made comprehensive findings of fact and conclusions of law and denied the motion. The appellant now presents five points wherein he asserts the 27.26 trial court erred in so denying his motion.

■ Before proceeding to the merits, this court must determine if it has jurisdiction of this appeal from the denial of a 27.26 motion to vacate a life sentence. Notice of Appeal was filed April 12, 1979, and jurisdiction must be determined under amended Mo.Const.Amend. Art. V, § 3, which became effective January 1, 1979. *State v. Garrett,* 595 S.W.2d 422 (Mo.App.1980). Under that amended provision the Supreme Court has exclusive jurisdiction "in all cases where the punishment imposed is death or imprisonment for life".

Under the preceding Art. V, § 3, the Supreme Court had exclusive jurisdiction "in all appeals involving offenses punishable by a sentence of death or life imprisonment". In determining jurisdiction of 27.26 appeals under this provision, the Supreme Court considered the underlying offense. "[T]his appeal from a ruling under S.Ct. Rule 27.26, V.A.M.R., is an appeal 'involving' such offense, and jurisdiction is in this Court." *Garrett v. State,* 481 S.W.2d 225, 226 (Mo. banc 1972). Also see *Parks v. State,* 492 S.W.2d 746 (Mo. banc 1973); *Ginnings v. State,* 506 S.W.2d 422 (Mo.1974). However, the current provision no longer defines the Supreme Court's jurisdiction upon the basis of what the appeal "involves". It is now dependent upon whether or not the punishment imposed in the case on appeal is imprisonment for life or death. A proceeding under Rule 27.26 is a separate case, civil in nature. *Layton v. State,* 500 S.W.2d 267 (Mo.App.1973). No punishment

is imposed in appellant's 27.26 case and this court has jurisdiction even though the appeal involves a prior case in which the punishment of life imprisonment was imposed. The appellant's motion to transfer this appeal to the Supreme Court was properly denied.

In his first·point the appellant alleges the relief sought should have been granted because of ineffective assistance of counsel at his five-day trial. Since the 27.26 hearing was held prior to April 25, 1979, the trial court properly reviewed the evidence to determine whether or not ineffective assistance of counsel had denied the appellant a fair trial. *Goforth v. State*, 585 S.W.2d 537 (Mo.App.1979). To support this point, the appellant cites 41 alleged deficiencies of counsel in regard to the admission or rejection of evidence. Of 21 instances of alleged improper failure to object or to object properly, in only seven instances would such an objection have had a reasonable chance of being sustained. In regard to four of these instances, counsel gave a tactical reason why he did not object. Twenty instances assert improper failure to obtain the admission of evidence by not demonstrating relevancy, rephrasing a question, or requesting a reason for the trial court's ruling. Seven of these instances deal with evidence for impeachment of the state's witnesses. The trial court has broad discretion in limiting the admission of evidence for impeachment. *State v. Davis*, 566 S.W.2d 437 (Mo. banc 1978). The trial court, apparently due to the persuasiveness of appellant's counsel, was liberal in the admission of evidence for that purpose. However, there is no reason to think the action appellant now suggests his counsel should have taken would have caused the trial court to extend the limits of admissibility any further than it did. It should also be noted that in many of the instances complained of the excluded evidence concerned a point that was otherwise developed or established. Ineffectiveness of counsel is not established because counsel would not make a futile argument in support of the motion for acquittal. *Clark v. State*, 578 S.W.2d 60 (Mo.App.1978). Nor is it established by principal counsel's failure to object to his co-counsel, in a heated manner, causing to be expunged from the record a suggestion that he had improperly told a law enforcement officer that he represented a witness for the state. Nor is ineffectiveness demonstrated by counsel's failure to object to the argument of the prosecuting attorney inquiring, where is appellant's common-law wife with whom he testified he had spent the evening of the crime? *Booth v. State*, 491 S.W.2d 286 (Mo. 1973); *Jackson v. State*, 540 S.W.2d 616 (Mo.App.1976).

In spite of the foregoing review of appellant's assertions, ineffective assistance of counsel is not to be determined by a post trial academic determination that counsel could have successfully objected to or introduced evidence in a given number of instances. *Goforth v. State*, supra. Suffice it to say, that in no instance where an objection could have been properly sustained or proffered evidence received, was that evidence of great significance or persuasiveness. The original trial court, obviously with justification, commented: "This case has been well tried by both the prosecution and defense . . .. I don't know when I have seen a case that was any better presented by both sides." The 27.26 trial court considered the alleged deficiencies individually and collectively and concluded they did not demonstrate the appellant, because of ineffectiveness of counsel, had been denied a fair trial. The evidence supports that determination, *Webb v. State*, 589 S.W.2d 89 (Mo.App.1979), as it would a determination that counsel's performance conformed to the care and skill of a reasonably competent lawyer rendering similar services under the existing conditions. *Seals v. State*, 580 S.W.2d 733 (Mo. banc 1979).

The appellant's next point is that his conviction was obtained as a result of the bias and prejudice of the trial judge. Because of the import of this assertion, this court will lay aside the contention that such an alleged error is not cognizable under Rule 27.26 and fully consider this point. To

support this point, the appellant cites 17 instances which he asserts demonstrate bias and prejudice against the appellant or his counsel. Four of these instances deal with the comments of the trial judge upon reading the recess cautionary instruction, MAI-CR 1.08. Upon overruling appellant's motion for a mistrial for failure to read that instruction on one occasion, the court observed that he had done so for two days at the risk of boring the jury to death and that he got tired of telling the jury over and over and over again the same thing. When so instructing the jury on one occasion he remarked, "I know you get awfully tired of hearing this"; on another he said, "here we go again" ; and on yet another instance he inquired of the jury "guess what I am going to say to you?" and a juror responded, "a little speech". The appellant insists that this instruction was for his benefit and the comments of the judge indicated his bias and prejudice. This is a strained inference. The proper rationale was expressed by the 27.26 trial court in saying: "Only a judge who has been compelled to recite this litany to twelve weary jurors several times each day during a multi-day trial can understand the discomfiture of a trial judge when expressions of boredom, impatience, amusement, incredulity, disgust and other emotions cross the faces of those to whom he must direct this admonition. This Court cannot fault the trial judge for his efforts, however awkward, to ease into what sometimes becomes an uncomfortable chore during any protracted criminal jury trial."

Bias and prejudice were not indicated by the trial judge's expression of incredulity upon defense counsel's request for a mistrial because the sheriff was in the courtroom during the trial; nor by overruling an objection to the prosecuting attorney reading the appellant's confession to the jury; nor by the refusal of a bench conference upon appellant's objection to certain exhibits when that conference would have served no purpose; nor by a firm admonition to appellant's counsel not to ask a question to which an objection had been sustained. The trial judge was presented with an inordinate number of offers of evidence of doubtful relevance. He was liberal in permitting the appellant to present such evidence. Nevertheless, the appellant argues that the comments of the trial judge on two such offers displayed his bias and prejudice. In one instance, when counsel for appellant was asking a chiropractor his diagnosis of the appellant's neck lash injury received in a car accident approximately two weeks before the murder, and the state objected, the trial judge remarked that he saw no relevance but upon the assurance of counsel it was relevant, permitted the question. This certainly does not demonstrate antipathy on the part of the trial judge. In the second instance, the court permitted the appellant to present collateral evidence that he felt "as a strictly legal purpose" was not admissible, but "in fairness to the defendant, maybe the jury ought to hear it". He then said, "it may result in a guilty man being turned loose, I don't know, but I feel like in fairness maybe it ought to come in". Then after a comment by appellant's counsel the trial judge added, "well, I am not passing on his guilt or innocence but I am merely suggesting that could be a result." It should be noted this did not occur in the presence of the jury, but in all events it does not demonstrate bias and prejudice but the antithesis thereof. Nor is prejudice demonstrated by the trial judge inviting an objection to evidence derogatory to appellant's counsel and upon such objection being made, striking that evidence. It certainly was not evidenced by the trial court on one occasion overruling appellant's objection to relevancy and commenting that there was a lot of evidence that did not seem to have any relevance. The action of the trial judge in interrupting the cross-examination of assistant prosecutor Geisler concerning his familiarity with the Code of Professional Responsibility was eminently correct and evidenced no bias or prejudice. While the trial judge perhaps demonstrated a bit of impatience in engaging in a colloquy with appellant's counsel concerning the possibility of a mistrial because instruction MAI-CR 2.50 was given out of order that colloquy was not in the presence of the jury and does

not indicate any animosity toward or preconceived notion concerning the appellant. *State v. Turner*, 320 S.W.2d 579 (Mo.1959). Nor does the trial judge's suggestion that if he erred, counsel could argue that point in his motion for a new trial. Appellant would also find prejudice in the trial judge urging counsel to proceed to another subject with such expressions as: "We have about beat this horse to death" and "I don't think we are picking very many cherries out of this tree." These familiar Ozark expressions conveyed the message of the court with far greater meaning than more stilted language and did not evidence bias.

Lastly, the appellant would find bias and prejudice from the fact the trial judge, early in his career when he had just become a prosecuting attorney, tried and lost a case similar to the case being tried. This incident was related by the trial judge to appellant's counsel outside the courtroom and out of the presence of the jury. Once again, this does not establish bias or prejudice. Had the trial judge, by reason of that incident, any preconceived feelings about the appellant's case, he certainly would not have told the story to appellant's counsel. A careful review of the entire record makes it clear that the allegations the trial judge was biased and prejudiced against the appellant or his counsel is utterly without foundation. Such a review does establish that the trial judge was a judge of great perception and experience and that he presided over appellant's trial with patience, firmness and fairness.

■ By his next two points the appellant contends his conviction should have been vacated because it was obtained as the result of perjured testimony. His third point pertains to the testimony of perjured testimony. His third point pertains to the testimony of Hiram Gardner and his fourth point to the testimony of Sylvester Smith. Before the appellant may prevail on either point, he must establish (1) the witness' testimony was false; (2) the state used that testimony knowing it was false; and (3) the conviction was obtained as a result of the perjured testimony. *Reynold v. State*, 575

S.W.2d 915 (Mo.App.1978). The appellant bears the burden of proof to establish those facts, *Billings v. State*, 546 S.W.2d 778 (Mo. App.1977), and the review of this court is limited to a determination of whether the findings and conclusions of the 27.26 trial court in regard to those facts are clearly erroneous. *Friends v. State*, 599 S.W.2d 80 (Mo.App.1980).

■ Hiram Gardner had been a police officer for the City of Sikeston since 1963. At the original trial the appellant attempted to show that his confession was involuntary because, among other things, he was held overnight and because of the circumstances of his detention and interrogation. Sergeant Gardner, as a rebuttal witness, in essence testified: He had known the appellant most of appellant's life; the appellant had been picked up by the police 10 or 15 times; he had been picked up for things other than curfew violations and insignificant matters; and that he had been held 20 hours and interrogated during his detention. At the 27.26 hearing Gardner testified that most of his experience was with the appellant as a juvenile; he did not remember that appellant had been arrested for a felony; he could not remember testifying that appellant had been picked up 10 or 15 times and could not state whether that testimony was correct or incorrect; he could not remember if he remembered the number of times when he testified at the original hearing; and he could not remember whether or not appellant had been held for the 20 hour limit. The 27.26 trial court found that the appellant did not establish that Gardner's testimony at the original hearing was false. This finding and conclusion of the 27.26 trial court is not clearly erroneous and this point of the appellant is denied even without consideration of whether or not the appellant established the other two prerequisites.

Sylvester Smith, a convicted felon, upon his release from the Missouri Penitentiary in August, 1974, came to Springfield where he became acquainted with the appellant. At the original trial Smith testified that appellant asked him to participate in the

robbery of the liquor store during which the murder was committed; that he saw a shotgun, before and after it was sawed off, in the possession of the appellant; and that the reconstructed shotgun, pieces of which were found under the body of the decedent resembled the shotgun in appellant's possession. He also saw in appellant's possession shotgun shells of the same gauge as the reassembled shotgun. At the original trial the appellant waged a vigorous and protracted attack upon Smith's credibility, principally by showing he had been paid a $500 reward and attempting to show he received favorable treatment from the prosecuting attorney.

So far as the record is concerned, Smith injected himself into appellant's 27.26 hearing by writing a letter. The letter was dated October 15, 1978, and mailed from Terre Haute, Indiana, where Smith was an inmate in the federal penitentiary. It was addressed to Mr. Sammy Dennis, Jr., at the Greene County Jail. The 27.26 hearing was set for October 31, 1978. On October 27, 1978, the appellant filed a motion for the appearance of Smith at the hearing. The hearing was held October 31, 1978, but continued for the testimony of Smith and one of appellant's trial counsel. When funds were obtained for the appearance of Smith, the continued hearing was set for December 26, 1978. Before the latter date it was learned that Smith had been moved to Danberry, Connecticut, and additional funds would have to be obtained for his appearance or arrangements made for his deposition. At the continued hearing, by stipulation, the letter was admitted in evidence with the court to assess its credibility. The 27.26 trial court granted a further continuance for the appellant to determine whether or not he wanted Smith to return or to take his deposition. On January 4, 1979, the appellant filed his written waiver of an opportunity to take the deposition of Smith or examine him further regarding the statements in the letter. On January 9, the appellant through counsel and personally, stated in open court that he determined to forego any effort to present the testimony of Smith whether by deposition or personal appearance. Both parties rested and the matter was taken under advisement.

Therefore, the evidence before the 27.26 trial court concerning the alleged perjury of Smith consisted of the letter and the transcript of the original trial, which had been admitted in evidence. The pertinent parts of the October 15, 1978, letter read as follows:

Now about that guy Jame you can let him read this. frist ok (illegible) (illegible) were face to face then you know what (illegible) happen as for as Someone doing anything to me. See you tell him (illegible) let him read this. he know why I took the Stand against him. Because he told the police that I did the robbery & killing and I know that he did Because it was right in front of my face. And the other guy did not lie on me So I did Not Say anything about him that why he got cut a loose. his Name was Calivin. But let know that I will help him if he do not try and tell the Same lie on me Because I Never do him wrong if he do Not lie on me. tell I Be glad to testify for him that the prosecutor made me lie and Say thing that I did Not know and they made me Say I See that gun. tell him I can help him. tell I try to talk to pratt that lawyer they had about it along time But he would Not do anything about it. Well rapp Be cool and its ok to give him my address ok. . . .

P.S. Are you Back for a New trial. if So have your lawyer talk with Me. I Can Be a Big help just do Not try and lie on me ok. I try and help you get Cut a loose.

The trial court made extensive interpretations of the letter, including an interpretation that Smith said he saw the crime and that the letter was not a statement he had committed perjury at the trial, but rather an offer to commit perjury for appellant at the 27.26 hearing. Appellant first insists that the letter should not be interpreted to mean that Smith saw the crime, but that Smith saw the appellant try to implicate Smith. Even if that is so, that is not decisive. The letter is reasonably subject to

interpretation as an offer to commit perjury at the 27.26 hearing. Such an interpretation is fortified by the fact that Smith's testimony at the original trial concerning his relationship with the appellant, Smith's activities the night of the crime, and Smith's relationship with the police, when tested by the other evidence, proves to be generally accurate. It is even further fortified by Smith's offer to be "a big help" to Sammy Dennis, Jr., upon his potential new trial. The findings and conclusions of the 27.26 trial court that by the letter of October 15, 1978, the appellant did not meet the burden of proving that Smith committed perjury is certainly not clearly erroneous and appellant's fourth point is denied.

The appellant's next point is that his motion must be sustained because his conviction was obtained as a result of the admission in evidence of movant's confession after movant's motion to suppress had been overruled by a trial judge who lacked jurisdiction thereby denying movant a fair trial. The background for that point is as follows. The appellant initially was jointly charged with Calvin D. Pullem. Appellant and Pullem filed separate motions to suppress. Appellant's motion was to suppress his incriminating statements and evidence seized at his residence. The latter consisted of a shotgun shell of the same caliber as the weapon that has been referred to. Pullem's motion was set for hearing on May 13, 1975. By agreement appellant's motion was heard jointly with Pullem's motion, with the appellant reserving the right to call additional witnesses. On that day the court granted appellant's motion for severance for trial. Rule 24.06. Pullem was separately tried on May 19, 1975, and acquitted. Evidence was heard on the motions to suppress on May 13 and 14, 1975. On May 19, 1975, Pullem's motion was overruled, but no entry was made concerning appellant's motion. Appellant's case was set for trial on July 7, 1975. On June 30, 1975, appellant filed a motion to disqualify the judge of division III. On July 1, 1975, the judge of that division sustained the motion. On the same day the judges of the other divisions disqualified themselves. On July 2, 1975, the

Supreme Court entered its order that the Honorable H. A. Kelso be transferred to the 31st Judicial Circuit in the matter of *State of Missouri v. James Bryant.*

Nevertheless, on July 3, 1975, the day to which appellant's motion had apparently been continued, the judge of division III made the following docket entry:

State by prosecutor Kelly. Defendant in person and by attorney W. Davis. Further hearing on defendant's motion to suppress. Judge of Division 3 determines from evidence heard that defendant intelligently and voluntarily consents to Judge of Division 3 completing hearing on motion to suppress and deciding same and defendant voluntarily and intelligently waives rights, if any, to have a new hearing on motion to suppress with another judge and to complete hearing with another judge and have another judge decide motion. Judge of Division 3 determines there is no reason why he should not complete hearing on motion to suppress and decide same.

At the adjourned hearing the appellant recalled two witnesses and testified himself in support of his motion. At the conclusion of the hearing, the judge overruled the motion to suppress. During the original trial when the shotgun shell in question was offered, the appellant objected upon the basis of an illegal search. When his written confession was offered, he objected upon the basis that his statement was the product of coercion and was not voluntary. When reference was made to his incriminating oral statements, either no objection or a general objection was offered. At no time prior to the amendment of appellant's motion under Rule 27.26 did the appellant make any objection or even indicate dissatisfaction with the fact that the judge of division III completed the hearing upon his motion to suppress.

At the 27.26 hearing the defendant testified that he did sign a motion to disqualify the judge on June 30, 1975. He stated that he did not remember if that judge on July 3, 1975, asked him if he had any objection to that judge continuing the hearing; he did

not know that judge had been disqualified; he thought his motion to suppress had been overruled; and he thought the July 3, 1975, hearing was in reference to the judge's disqualification. It should be noted that the record reflects that on July 3, 1975, the appellant appeared in person and with his counsel and that the court announced: "The matter comes on at this time for further hearing on the motion to suppress filed by the defendant Bryant." An examination of the 43 pages of testimony of appellant discloses that all questions and answers were directed toward a determination of the voluntariness of his confession. There was not one question or answer pertaining to the disqualification of the judge.

The 27.26 trial court denied this point for two reasons: (1) the appellant had no right to disqualify the trial judge in the middle of a hearing; and (2) if the appellant had the right to require Judge Kelso to hold a suppression hearing, the appellant waited too long to ask for relief and that by announcing ready and failing to object before Judge Kelso, the appellant waived his right to urge this point. In spite of the record concerning the appellant's personal participation in the hearing of July 3, 1975, the 27.26 trial court noted that the record did not reflect the appellant's personal "knowing and voluntary" waiver and made no finding on that issue.

█ This court agrees that appellant had no right to disqualify the judge in the middle of the suppression hearing. The application could have been and should have been rejected as far as that hearing was concerned. *Jenkins v. Andrews*, 526 S.W.2d 369 (Mo.App.1975). However, it was not so rejected, but was accepted and the disqualification entered upon the record. Moreover, the Supreme Court had assigned Judge Kelso to the case. Judge Kelso had "full and complete jurisdiction of the case". *State v. Creech*, 364 Mo. 92, 95, 259 S.W.2d 372, 374 (banc 1953). This point of error cannot be denied upon the first reason assigned by the 27.26 trial court.

However, the second reason is a finding and conclusion that the appellant did not raise this point as required by the procedural rules of this state and that as a matter of law he cannot prevail on that issue in this proceeding. While this court cannot make a finding of fact not made by the 27.26 trial court, that conclusion of law is to be upheld if it is sustained by any legal theory. *Harris v. State*, 577 S.W.2d 140 (Mo.App.1979).

█ At the outset it should be made clear this court does not hold the judge of division III could be vested with authority by the consent of the parties. However, that is not dispositive of this point. The hearing on appellant's motion to suppress was an ancillary or preliminary proceeding. In that respect it is similar in nature to a preliminary hearing upon a felony complaint. An irregularity in or even the omission of such a hearing is waived by proceeding to trial without objection. *State v. Richardson*, 347 S.W.2d 165 (Mo.1961). The same is true of the right to object to an indictment returned by a grand jury convened under wholly inapplicable statutes. *State ex rel. Woods v. Connett*, 525 S.W.2d 326 (Mo. banc 1975); *Johnson v. State*, 574 S.W.2d 957 (Mo.App.1978). The preliminary nature of the suppression hearing is emphasized by the fact the ruling "is, in a sense, interlocutory in nature. The real damage is not done until the evidence is introduced in the trial of a case for consideration by a jury. Thus, a trial court can receive additional evidence and change its ruling prior to admitting the objected-to items in evidence before a jury." *State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975). This irregularity in completing the ancillary hearing and entering the interlocutory order was error but it did not divest the circuit court of jurisdiction over the principal trial.

█ *Jackson v. Denno*, 378 U.S. 368, 376–377, 84 .S.Ct. 1774, 1780–1781, 12 L.Ed.2d 908, 915, 1 A.L.R.3d 1205 (1964) enunciated the constitutional rule that a defendant has a "right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." However, "[l]anguage in subse-

quent decisions of this Court has reaffirmed the view that the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." *Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 608 (1977). In other words, a state may consistently, with the United States Constitution for the purpose of direct review, require that a confession be challenged at the time of trial or not at all. In the absence of such a timely objection, a defendant may not on direct review complain of a failure to accord a voluntariness hearing. *Wainwright v. Sykes,* supra. It follows then the same result is reached in the absence of an objection to an irregularity in a voluntariness hearing. It has long been the rule in this state that, with rare exception not applicable here, to preserve error, even though it has a constitutional basis for direct review, a timely objection must be made stating the basis for that objection. *State v. Fingers*, 585 S.W.2d 203 (Mo.App.1979).

The contemporaneous objection rule does serve a legitimate state interest.[1] "By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence." *Henry v. Mississippi*, 379 U.S. 443, 448, 85 S.Ct. 564, 567, 13 L.Ed.2d 408, 413 (1965). Or, in this case, if the objection could not otherwise be obviated, to hold a second suppression hearing outside the hearing of the jury. The interest of society in that rule has been eloquently and forcibly stated in a later case.

A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous objection rule surely falls within this classification. *Wainwright v. Sykes,* supra, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594, 608.

Whether or not failure to comply with a contemporaneous objection rule bars review of an alleged contravention of a constitutional requirement of the type under consideration by habeas corpus has been the subject of a long history in the federal courts. See *McCrary v. State*, 529 S.W.2d 467 (Mo.App.1975). The principles so enunciated are applicable to this review. *Weir v. State*, 589 S.W.2d 256 (Mo. banc 1979); *Fields v. State*, 572 S.W.2d 477 (Mo. banc 1978). A restrictive view of the bar was apparently established in *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963), in which the court said " 'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard", emphasizing the requirement of a defendant's personal waiver of his federal claims. It is whether or not the appellant in this case, within the purview of that rule, personally, knowingly and voluntarily waived his right to object that was not determined by the 27.26 trial court. However, later cases made it clear that deliberate by-passing by counsel of the contemporaneous objection rule as a part of trial strategy would bar review of a defendant's federal claim. *Henry v. Mississippi*, supra. Then in *Wainwright*, the Supreme Court determined that review of a claimed error in the admission of a defendant's confession should also be barred on habeas corpus, as on direct appeal, absent a showing of cause for noncompliance with a contemporaneous objection rule and of actual

---

1. This case is distinguished from *Toliver v. Wyrick*, 469 F.Supp. 583 (D.C.Mo.1974) for in that case the court considered a procedural rule that required multiple objections.

prejudice resulting from the alleged violation.

■ Appellant Bryant cannot prevail on this point by reason of the principles established in *Henry* and *Wainwright*. Until his motion under Rule 27.26, at no time did the appellant voice any objection to the judge of division III concluding the suppression hearing. The suppression hearing was continued at the instance of the appellant. At the continued hearing not only did counsel not object to that judge, but they expressly agreed that he should conclude the hearing. The appellant then seized upon his opportunity and presented additional testimony, including his own. At the trial he announced ready. When his confession was offered he did not mention the objection he now raises. To now consider this point would be to approve the "sandbagging" condemned by *Wainwright*. "Thus where [as here] the constitutional right is well known, and is a 'trial-type' right, and where petitioner not only fails to object but proceeds affirmatively with proof, regardless of his reason for doing so, we do not feel he can openly invite error and then later rely on the error to reverse his conviction." *Turnbough v. Wyrick*, 551 F.2d 202, 204 (8th Cir. 1977). The actions of appellant constituted a "deliberate by-pass" of his right to make his present objection. *Turnbough v. Wyrick,* supra; *Ford v. State*, 534 S.W.2d 111 (Mo. App.1976); *McCrary v. State*, supra. Certainly he has not demonstrated cause for his failure to make a contemporaneous objection nor prejudice resulting from the alleged error. So far as the admission of the shotgun shell is concerned, a claim of illegal search and seizure is not cognizable in this proceeding. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This point is denied.

Appellant's final point is that the trial court erred in denying appellant's motion to reopen the 27.26 hearing to present the testimony of Sylvester Smith. The 27.26 hearing was closed on January 9, 1979. The motion to reopen was filed March 14, 1979. Attached to the motion is a purported second letter from Sylvester Smith bearing the date of February 11, 1979. While the letter is not in evidence in the 27.26 hearing, the contents of the letter must be noted in considering the motion. In general the letter stated Smith is willing to help by telling the truth about how he was forced to lie at appellant's original trial. Also, that he had another witness to the fact "they" made him say things he didn't know.

As heretofore noted, a prior letter of Smith was admitted by agreement. Then after being allowed eight days to consider the matter, the appellant decided, expressly said to be a matter of trial strategy, not to present the testimony of Sylvester Smith. It was Smith's prior letter the 27.26 trial court concluded was an offer to commit perjury.

■ Whether or not a hearing should be reopened is within the discretion of the trial court. *State v. Hunt*, 461 S.W.2d 879 (Mo.1971). In exercising that discretion the trial court is entitled to consider the inherent credibility of the proffered testimony. Compare *State v. Noble*, 591 S.W.2d 201 (Mo.App.1979). Smith, in the original trial and under vigorous cross-examination, repeatedly stated under oath that he had not been subjected to pressure or threats. His first letter was an offer to help appellant if appellant did not lie on him. He extended the same offer of help to another criminal defendant upon the same terms. Also properly considered was the vagueness of the proffered testimony. Smith's first letter was filed in court on October 27, 1978. Obviously, there was ample time between that date and January 9, 1979, for the appellant to have found out with some certainty what Smith would testify to. Yet on the later date, as a matter of trial strategy, he declined to present the testimony of Smith. Between that date and the filing of the motion to reopen, there was even more time to make that determination and present the proposed testimony with more specificity. Yet, the motion is only in very general terms and makes vague reference to another unnamed witness. The 27.26 trial court extended the appellant every opportunity to present the testimony of Smith, but the

appellant declined as a matter of trial strategy. The appellant has not demonstrated the court abused its discretion in refusing to reopen the case to receive Smith's renewed offer of help and the point is denied. The judgment is affirmed.

BILLINGS, P. J., and PREWITT, J., concur.