**STATE of Missouri, Respondent,**

v.

**Ricky CHRISTIAN, Appellant.**

No. 41083.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 19, 1980.

Wayne T. Schoeneberg, Hannegan, Knight, Kennedy, Schoeneberg & Weber, Inc., St. Charles, for appellant.

David K. Dowling, Montgomery City, Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant appeals a jury conviction of second degree burglary, with a sentence of two years imprisonment. The appeal contends, inter alia, that the confession in evidence was inadmissible as being obtained in contravention of defendant's *Miranda* rights.

At approximately 1:30 a. m., February 17, 1979, Orval Huhn, the owner of Orval's Tavern in Montgomery City, Missouri, locked the front door of his establishment and closed for the day. He then locked the walk–in beer cooler located behind the saloon. The cooler was held shut by a padlock device and the key kept inside the tavern. Only Mr. and Mrs. Huhn had keys to the tavern and neither had given permission to anyone to open the cooler.

On reopening the tavern in the morning, Mrs. Huhn noticed that the lock on the

cooler door was bent and the apparatus holding the lock was broken. The door to the cooler equipped with a self–closing device was shut. As the Huhns did not keep an inventory they were unable to determine if any beer was missing.

On the afternoon of February 20, 1978, defendant, a seventeen year old youth was arrested at his place of employment and taken to the Montgomery County Jail. He testified that he requested to see an attorney. The prosecution did not offer evidence to refute this assertion. Defendant or his father called the office of Dan Deiter, a Montgomery City attorney to represent the defendant. David Dowling, an associate of Mr. Deiter, met with the defendant at about 3:30 p. m. After advising the defendant that he could not represent him because of a conflict of interest, Mr. Dowling told him not to make any statement without first consulting an attorney.

Mr. Dowling then informed the sheriff's office that he had told the defendant to make no statement and that by reason of the conflict the defendant would need another attorney.

Approximately four or five hours after his incarceration commenced, defendant was escorted to the sheriff's office for questioning. When the sheriff and defendant were alone in the interrogation room, the defendant was told that "cooperation is the best way to go," and that he (the sheriff) would communicate the defendant's cooperation to the prosecuting attorney. The defendant agreed to cooperate, and a deputy sheriff was summoned to transcribe his statement. It was then that the defendant was given his *Miranda* warnings. The defendant indicated that he wished to make a statement and signed a waiver card. During questioning by the sheriff and deputy he implicated himself in the burglary of the walk–in cooler.

Defendant's motion to suppress the statement as a violation of his fifth and sixth amendment rights was denied and his confession was admitted in evidence.

Defendant's first allegation is that the trial court erred by not striking a venireman for a cause. His contention is that the venireman possessed a hearing impairment which rendered him incompetent as a juror. The record reveals that interrogation into his hearing capabilities established that the venireman would be able to hear the trial proceedings. It is well settled that the trial court has vast discretion in ruling on a challenge of a venireman for cause and its decision should not be disturbed except for a clear abuse of discretion. *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978); *State v. Cuckovich*, 485 S.W.2d 16, 22 (Mo. banc 1972). This rule is based on the logical conclusion that the trial court is in a better position to determine the validity of a challenge for cause than an appellate court. *State v. Treadway*, 558 S.W.2d at 649. We find no abuse of trial court discretion in failing to strike the venireman for cause.

Defendant's second complaint is that the confession was obtained in contravention of his *Miranda* rights. The essence of defendant's argument is that because the defendant was improperly beguiled into waiving his *Miranda* rights, the waiver is invalid, the interrogation is improper and the subsequent incriminating statement is inadmissible.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self–incrimination." Id., at 444, 86 S.Ct., at 1612. The safeguards include that the defendant "be warned prior to any questioning, that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id., at 479, 86 S.Ct., at 1630.

In order to admit a confession the prosecution must show that the "defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them." *State v. Hughes*, 596 S.W.2d 723, 726 (Mo. banc 1980) quoting *State v. Alewine*, 474 S.W.2d 848, 851 (Mo. 1972). The state has the burden of proving by a preponderance of the evidence that defendant declined to invoke his right to speak with an attorney and voluntarily consented to questioning. *State v. Hughes*, 596 S.W.2d at 726; *State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978). Voluntariness of a confession, "can be determined only by considering all the relevant circumstances surrounding it." *State v. Hughes*, 596 S.W.2d at 726 quoting *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

The determination of voluntariness is made in the first instance by the trial court. It must determine the credibility of witnesses and where evidence is in conflict make factual findings. On appeal, the question is whether the evidence was sufficient to support the trial court's findings. *State v. Hughes*, 596 S.W.2d at 727.

The state's evidence does not clearly demonstrate that defendant declined his rights, particularly the right to counsel. The sheriff's testimony concerning this point is vague at best. The transcript reveals the following colloquy between defendant's attorney concerning defendant's request for counsel:

Q. [Defendant's attorney] During that period of time, did he [the defendant] request to see an attorney?

A. [Sheriff Whyte] No, not that I can recall.

Q. Didn't you call Dan Deiter over to talk to him [the defendant] and Dan Deiter come [sic] over and said to you he would have to withdraw because of a conflict of interest in this?

A. On that day?

Q. Yes, sir.

A. I can't recall that. It is possible.

Q. You remember that happening though, don't you?

A. Not specifically that, no. I can't recall it right now, no.

Q. Well, let me ask you this: Do you remember calling Attorney Dan Deiter over to talk with Ricky Christian at one time, at any one time, in your office before taking a statement from Mr. Christian?

A. Well, I know Mr. Deiter has talked to him, but I can't remember if I called or not.

Q. Well, somebody called Mr. Deiter and Mr. Deiter came over?

A. Well, they may have. I don't know.

Q. Okay. Do you ever remember any circumstances of him coming over and then saying he couldn't represent him because of conflict of interest?

A. Yes.

Q. Okay.

A. But I don't know the date.

Q. All right. You just can't be sure whether or not it was February 20, 1978?

A. No.

Q. But you do remember that circumstance taking place?

A. Yes.

Q. On that particular time, did you continue to question Mr. Christian after Mr. Deiter left before another attorney was obtained for Mr. Christian?

A. Are you talking about on the 20th?

Q. Well, on the time that you remember Mr. Deiter coming over.

A. Well, I don't think I questioned him.

Q. One of your officers did?

A. Well, I don't know.

Q. All right. The best you can tell, you remember him coming over though at one particular time at Mr. Christian's request and saying he couldn't represent him and he had to leave?

A. Yes.

Q. And then no further attorney was obtained for Mr. Christian at that particular time?

A. I don't believe so.

We conclude that the record fails to establish that defendant waived his right to counsel. The state however, contends even if the defendant requested counsel he made a subsequent intentional relinquishment of that right and indicated he wanted to make a statement. We disagree.

 Because " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights", *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), a heavy burden rests upon the prosecution to demonstrate a valid waiver of *Miranda* rights. "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda v. Arizona*, 384 U.S. at 476, 86 S.Ct. at 1629. "[A] confession in order to be admissible must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *State v. Hughes*, 596 S.W.2d at 726 quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897).

 The *Miranda* opinion does not create a per se proscription of indefinite duration upon any further questioning by any police officer. However before questioning can commence, the defendant must be advised of his rights and voluntarily decline to exercise them. *Michigan v. Mosley*, 423 U.S. 96, 102–03, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975).[1] The critical issue here is whether defendant's right to cut off questioning was "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96,

104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). A review of the circumstances indicates that the defendant's right to cut off questioning was not so honored. The transcript reveals the following colloquy between the sheriff and defendant's attorney:

Q. [Defendant's attorney] Didn't you say something to him about you would talk to the Prosecuting Attorney if he filled out these statements?

A. [Sheriff Whyte] I don't understand your question.

Q. Well, didn't you say something to Ricky about if he cooperated you would talk to the Prosecuting Attorney about going easy on him or something?

A. I told him I would tell the Prosecutor he cooperated.

Q. That was before he made these statements, is that right?

A. Probably before; maybe during.

Q. While he was doing it you said, "I'll talk to the Prosecutor and tell him that you cooperated." Is that right?

A. I probably said something to that effect.

Q. Was that kind of to induce him to cooperate?

A. (Witness indicates by shaking head from side to side) [Prosecuting Attorney] Objection, your Honor.

THE COURT: Overruled.

Q. Wasn't that kind of to induce him to cooperate?

A. Yes, cooperation.

Q. That is kind of a promise, isn't it?

A. Not to me, it is not.

Q. Okay. Not to you, it is not?

1. In *Michigan v. Mosley*, defendant was arrested in connection with certain robberies and advised, in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that he was not obliged to answer any questions and that he could remain silent if he wished, and having made oral and written acknowledgment of the *Miranda* warnings, declined to discuss the robberies, whereupon the detective ceased the interrogation. More than two hours later, after giving *Miranda* warnings, another detective questioned defendant solely

about an unrelated murder. Defendant made an inculpatory statement, which was later used in his trial for murder which resulted in his conviction. The Supreme Court held that defendant's admission in evidence of incriminating statement did not violate *Miranda* principles. Defendant's right to cut off questioning was scrupulously honored, having commenced questioning about the murder only after a significant time lapse and after a fresh set of warnings had been given.

A. (Witness indicates by shaking head from side to side).

Q. Didn't you mean it when you said it?

A. No, not as a promise. I didn't prom- ise him anything.

Q. You didn't mean it when you said it?

A. I meant I would tell the Prosecutor he cooperated.

The totality of the circumstances does not demonstrate a voluntary waiver. The defendant was barely seventeen years old when arrested. He was held in custody for approximately five hours before the sheriff impermissibly beguiled him into consenting to questioning. Questioning should not have commenced until the defendant voluntarily waived his right to counsel and consented to questioning. The absence of a valid waiver renders the defendant's inculpatory statements inadmissible.[2]

We need not consider the contention that the prosecution failed to prove the corpus delicti of the crime charged independent of the confession. There was evidence of a crime—the tampered lock. This coupled with the confession, if admissible, would have been ample evidence to convict defendant. See State v. Robinson, 555 S.W.2d 667, 669–70 (Mo.App.1977). The state may have rested its case on the evidence of the breaking coupled with defendant's confession, although additional incriminating evidence may have been withheld as being cumulative. The case should therefore be remanded for new trial unless the state cannot produce additional evidence, in which circumstance, it should be dismissed. State v. Biddle, 599 S.W.2d 182 (Mo. banc, 1980).

Reversed and remanded.

GUNN, P. J., and STEPHAN, J., concur.

---

2. State v. Olinghouse, 605 S.W.2d 58 (Mo. banc 1980), is distinguishable from the case at bar. In Olinghouse the defendant was informed of his Miranda rights at the scene of his arrest. The defendant said he did not wish to speak to the police officers. He was taken to an FBI office and requested to call an attorney. He called the attorney but the attorney could not come to see him. Later an FBI agent read the defendant his Miranda rights, no threats or promises of leniency were made. The defendant then signed a waiver card and consented to the interrogation.