George Steven ELO, Appellant,

v.

STATE of Missouri, Respondent.

No. 33579.

Missouri Court of Appeals,
Western District.

Sept. 14, 1982.

Roger M. Baron, Grantham & Baron,
Tuscumbia, for appellant.

William K. Haas, Asst. Atty. Gen., John
Ashcroft, Atty. Gen., Jefferson City, for
respondent.

Before MANFORD, P.J., and KENNEDY
and WASSERSTROM, JJ.

MANFORD, Presiding Judge.

This appeal follows a denial of post con-
viction relief, pursuant to a Rule 27.26 mo-
tion. The judgment is affirmed.

Movant presents four points charging the judgment of the trial court was clearly erroneous because (1) the trial court made a finding that no testimony was received about statements made by movant when, in fact, the evidence revealed the contrary, (2) movant's statements were involuntary and made without proper waiver of the *Miranda* rights, (3) movant's statements and the recovered handgun and money were obtained as fruit of the poisonous tree and inadmissible, and (4) movant was denied a pre-sentence investigation prior to sentencing.

The record reveals the following pertinent facts. Movant was, by a jury, found guilty of murder first degree August 25, 1976. The homicide resulted from movant's armed robbery of a service station. On October 22, 1976, movant was sentenced to life imprisonment. Although initial appellate jurisdiction was in our state Supreme Court (Art. 5 § 3 Mo. Const., as amended), the denial of relief under Rule 27.26 vests this court with jurisdiction. *Bryant v. State,* 604 S.W.2d 669 (Mo.App.1980). No appeal from that conviction was ever perfected. This motion was filed, counsel appointed, a hearing held, and findings of fact and conclusions of law were entered, satisfying the Rule in *Fields v. State,* 572 S.W.2d 477 (Mo.banc 1978).

In his motion, movant alleged the violation of his constitutional rights because (1) the *Miranda* warning was not read in the presence of his *father,* (2) all statements received from movant after arrest were invalidated by the action of the arresting officers, (3) tape recordings of movant's statements were inadmissible because they contained gaps and were partially inaudible and the securing of them was a product of the infringement of movant's constitutional rights, (4) the verdict directing instruction was invalid because it did not give the jury the discretion to assess less than a life sentence upon a finding of guilty, and (5) movant was denied a pre-sentence investigation.

On December 30, 1975, movant was 17 years of age. He was at his parents' home that evening when the county sheriff and a deputy arrived. The sheriff placed movant under arrest and instructed the deputy to read the *Miranda* warning to movant. The deputy read the *Miranda* warning in the presence of movant, his parents, and the sheriff. The deputy then went back over the *Miranda* rights again. At this point, the sheriff and movant's father were engaged in a conversation out of the presence of the others. The second *Miranda* warning included a discussion as to whether movant understood the details of the warning. This "second warning" was in the presence of movant and *movant's mother.* Movant acknowledged he understood his rights, but stated he had nothing further to say. The sheriff took movant into custody. As movant departed his parents' home, his father told movant to tell the truth. Movant was placed in a vehicle with the sheriff alone. During the approximate 20 mile trip to jail, movant and the sheriff engaged in conversation about the homicide. The sheriff stated he probably initiated the conversation. In this conversation, movant told the sheriff he had entered the service station while a robbery was in progress. He told the sheriff a bearded man threw some money at him and told him not to say anything. Movant made no admission of having committed the offense.

Upon arrival at the jail, movant signed a written *Miranda* waiver. Movant testified before signing the waiver he had read the waiver and understood it. Prior to this time, movant had not made any statement admitting that he had committed the robbery or homicide.

At the evidentiary hearing on movant's 27.26 motion, the sheriff testified that movant, while in jail, voluntarily showed the sheriff where he had hidden the gun he had used in the robbery/murder. After the gun was retrieved and movant returned to jail, he was again advised of his *Miranda* rights, signed another waiver, and, at this point, admitted he had shot the victim. At the same hearing, movant was asked if he recalled his trial testimony. Movant remembered at trial he testified he entered the service station with the intent to rob it and during the robbery the victim struck him, he fell or stumbled and the gun discharged.

Following the evidentiary hearing on the 27.26 motion, the court found movant had been advised of his *Miranda* rights at the time of his arrest; that movant's statements, oral, written, and tape recorded were not tainted as fruit from the poisonous tree, and, further, there was no constitutional violation of movant's rights because no pre-sentence investigation was conducted.

Movant points (1), (2), and (3) are so interrelated that they will be disposed of conjunctively. As noted above, no direct appeal was perfected from movant's conviction. The record reveals a notice of appeal was filed. The record is not absolutely clear, but it appears the appeal was not pursued further due to lack of funds by movant to pay private counsel. The record does not reveal movant made any request to proceed in forma pauperis, nor is that an issue on the appeal. This procedural detail is noted because the constitutional errors claimed by movant are trial errors and appellant argues he is entitled to proceed under Rule 27.26 since these errors are of a constitutional stature and have not otherwise been addressed by appeal. Movant is correct as regards Rule 27.26, the pertinent part which reads:

"27.26(b)(3). A proceeding under this Rule ordinarily cannot be used as a substitute for direct appeal . . . but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal."

The foregoing language has been construed, however, not to extend any rights to collaterally attack alleged constitutional deficiencies which an accused has knowingly and voluntarily waived, *Nickens v. State*, 506 S.W.2d 381, 386 (Mo.1974).

■ The record herein is replete with facts and circumstances clearly revealing movant knowingly and voluntarily waived any and all available constitutional rights. However, this court will discuss ex gratia the claims of movant. Movant's argument can be reduced to three simple allegations. First, it is alleged the court's judgment is clearly erroneous because it made a specific finding that, ". . . Movant's contention that the trial court erred in permitting Sheriff Earnest to testify as to movant's statements made in the automobile is groundless. It appears that there was no testimony at trial about statements made by the movant during the ride to the jail with Sheriff Earnest." Movant finally points out that the Sheriff testified both at trial and at the evidentiary hearing that he engaged movant in conversation. As noted above, this issue has been waived by movant, but it is also worthy to note that movant has, in his first alleged error on this appeal, engaged in a very clever play on words. In the referenced testimony of the sheriff, there is acknowledgement and discussion of a conversation between movant and the sheriff. There is nothing which discloses any *statement* by movant which incriminated him. In fact, movant testified he falsified a story about a bearded robber and otherwise disclaimed any involvement during the automobile trip with the sheriff. The "play on words" comes from the above-quoted portion of the court's fact finding. It is obvious the court used the word, "statement" to describe any incriminating statement by movant, and not, as movant suggests that there was no conversation which finding would have been against the evidence. Movant's first argument has no merit.

■ Secondly, movant claims his "statements" were involuntary because he was only 17 years of age and the *Miranda* warning was not given in the presence of his father. Movant cites *State v. Christian*, 604 S.W.2d 758, 763 (Mo.App.1980). Movant cannot avail himself of the rule in *Christian* because the facts and circumstances herein clearly are distinguishable from those in *Christian*. In the instant case, the initial *Miranda* warning was given movant in the presence of movant, the sheriff, the deputy, the younger brother of movant, movant's mother, and movant's *father*. A second reading and discussion of the *Miranda* rights occurred in the presence of movant, the deputy, the younger brother, and movant's *mother*. There is no merit to movant's contention. At the same time,

movant makes much of his physical age of 17 years. This point was considered by the court in *Christian,* along with other facts and circumstances not present in the case herein. It has been observed that "... in cases of adolescents, age alone without more is insufficient to prevent a valid waiver of *Miranda* rights", *State v. Hunter,* 619 S.W.2d 883, 886 (Mo.App.1981). Movant extends his challenge to the voluntariness of his statements by alleging that, after the deputy read his rights to him, he told the deputy he had nothing to say and was later (during the automobile ride) questioned by the sheriff. In the first instance, movant did not raise this issue in his motion and this court need not consider it on appeal. *Drake v. State* 582 S.W.2d 711, 716 (Mo. App.1979). Nonetheless, the record dispels any unwillingness to talk with the sheriff during the automobile ride, nor does the record reveal the sheriff was ever aware movant had nothing to say. In addition, from the very testimony of movant, a reasonable inference can be drawn that he did not refuse to make a statement, but rather simply had nothing to say in response to the warning or to add to the warning. The record reveals that, after the deputy gave the warning the *second time* (during which he discussed each warning separately in the presence of movant, movant's younger brother and movant's mother) movant acknowledged he understood each separate warning. Movant was then asked and answered as follows: "Q. What did you say, if anything, after that? A... I believe I told him I didn't have anything to say". This is the sum total of the evidence on the issue. It is apparent that, as a mere afterthought, movant now makes the attempt to "convert" the foregoing into a refusal to make a statement. It is to be observed that the statement by movant was not even made in response to any questions about the robbery/homicide, since the deputy at *no* time questioned movant about either the robbery or homicide. There is no merit to movant's contention.

■ Movant proceeds to enlarge his attack upon his statements as being involuntary by charging the sheriff induced the statements by a promise of leniency. Movant again relies upon *Christian* supra. In *Christian,* the record revealed the officer assured the accused, he (the officer) would tell the prosecutor that the accused cooperated with the officer. It must be borne in mind that the court in *Christian* reversed the conviction upon the totality of all the circumstances. Movant here would suggest to the court that standing alone, the promise alleged in *Christian* would suffice. The decision in *Christian* does not so conclude. It is correct, as movant points out that an out-of-court statement or confession will be ruled involuntary where within the particular facts and circumstances of any case, "it is shown it has been obtained by any direct or implied promise," *Christian.* But, it has also been pointed out that the test is whether a confession is the product of an essentially free and unconstrained choice of or by the maker. If it is not such a choice "... and his capacity for self-incrimination critically impaired, the use of his confession offends due process..." *Vidauri v. State* 515 S.W.2d 562, 567 (Mo.1974).

Movant herein charges his will was overborne by promises of leniency by the sheriff. Movant's claim of "promised leniency" rests upon the following portions of the record. It must be borne in mind, the record shows the sheriff was not aware of movant's comment about his having nothing to say, nor does the record *ever* reveal movant's direct or implied refusal to discuss the matter. The record shows in the cross examination of the sheriff:

"Q. Did you ah ... ever say anything like, George, it'll be easier on you if you tell me what happened."

"A. I may have. I don't recall. I don't believe I did on ... I don't believe I did on the way back to town."

Then the record shows, upon the direct examination of movant:

"Q. Did he (the sheriff) say anything else to encourage you to talk?"

"A. On the way back?"

"Q. Yeah."

"A. Ah ... I don't know. There was so much conversation I can't remember hardly anything of it now."

\* \* \* \* \* \*

"Q. Did he (the sheriff) ever say anything along the lines that it would help you out later if you talked to him now?"

"A. After we got to the jail."

■ On cross-examination, movant admitted the conversation with the sheriff, disclaimed any involvement by movant, and included the fabricated story of the bearded robber. The foregoing is the sum total of the evidence upon this allegation. There is no showing either by direct evidence or by sufficient evidence which would support a reasonable inference that movant's "will was overborne" or that any promise of leniency was ever made by the sheriff, as alleged. There is no merit to this contention of movant.

Movant further alleges that the handgun and the oral, written, and tape recorded statement secured from him were "the product of the poisonous tree". He cites *Wong Sun v. United States* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *United States v. Bayer* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). Movant's entire arguments on this point are premised upon his conclusion that his will was overborne through a promise of leniency as well as on the alleged impropriety of the conversation with the sheriff during the automobile ride. These issues have been discussed above and have been shown to be without merit. This most recent contention fails because it also lacks merit.

Points (1), (2), (3), and (4) are ruled against movant.

■ In his final point, movant charges the trial court judgment was clearly erroneous because he was entitled to a pre-sentence investigation. Movant cites Rule 27.-07(b) (now Rule 29.07(a)) and § 557.026 R.S.Mo. 1978. It is movant's contention that the lack of such pre-sentence report rises to a constitutional violation. Movant fails to advise this court as to what constitutional violation occurred. The matter has been ruled previously and adversely to movant. It has been determined that Rule 27.-07 (which both parties herein agree was applicable at the time and to the circumstances of movant's proceedings) did not entitle an accused to a pre-sentence investigation as a matter of right, but rather, the matter rests within the discretion of the trial court. The principle announced was that failure to consider a pre-sentence report does not violate an accused's right to due process. *State v. Goforth* 535 S.W.2d 464, 468 (Mo.App.1976). This rule has been considered and applied in proceedings pursuant to Rule 27.26, *Allen v. State* 582 S.W.2d 361, 362 (Mo.App.1979).

There is no merit to movant's final point and it is ruled against him.

The record reveals the findings of facts, conclusions of law, and the judgment herein were not *clearly* erroneous.

Judgment affirmed.